12  397
e18  393
18  394

[No. 1496.]

## CALEY v. PORTLAND ET AL.

CONTRACTS—MINING LEASE—ASSIGNMENT.

Where the lessees of a mining claim assigned their lease, the assignee to work the claim and pay them out of the net proceeds, but the assignment did not require continuous work or forbid subletting, and after the assignee had worked the mine the greater part of the time of the lease without realizing any net proceeds, he let a third party work it the balance of the time who also failed to realize any net proceeds, in an action against the assignee for the purchase price, *held* that plaintiffs to recover must show that defendant had voluntarily put it out of his power to comply with the contract and realize the net proceeds, and that the fact of his permitting a third party to work the mine was not such showing.

*Appeal from the District Court of El Paso County.*

Messrs. GUNNELL & HAMLIN, for appellant.

Messrs. CROWELL & McGARRY, Mr. E. E. EDMONDS and Mr. J. C. HELM, for appellees.

WILSON, J.

Plaintiffs Portland and Mulligan sublet from the original lessees a portion of the ground embraced in the Last Dollar

lode mining claim, for the term of six months and twenty-two days from July 15, 1895. The agreement of sublease was in writing, and provided among other things that the plaintiffs should work the ground continuously with reasonable diligence, performing thereon during every calendar month of the life of said lease at least twenty shifts of work of two men each; also specifying the amount of royalties to be paid on ores extracted, and further providing that in case they failed to work the property continuously, or to fulfill any of the other covenants contained in the lease, then it should be lawful for the lessors to declare the lease void, and re-enter into the possession of the premises. On August 20, following, the plaintiffs sold and with the written consent of their lessors assigned their sublease to the defendant Caley, by a written assignment as follows:

"VICTOR, COLO., Aug. 20th, 1895.

"This agreement made and entered into this 20th day of August, 1895, by and between James Portland and Matt Mulligan, parties of the first part, and F. T. Caley, party of the second part, in consideration of the sum of one thousand dollars in hand paid, and the additional consideration of fifteen hundred dollars to be paid as hereinafter specified, do by these presents hereby sell, transfer unto the said F. T. Caley, all the right, title, claims, interest of, in and to the mining claim and lease hereunto attached. The said F. T. Caley agreeing to work said claim, and to pay said Mulligan and Portland the said sum of fifteen hundred dollars out of the net proceeds of said claim, they to have the full net proceeds until said sum of fifteen hundred dollars is paid in full to them.

"Witness our hands and seals this 20th day of August, 1895.

"JAMES PORTLAND.     (Seal)
"MATT MULLIGAN.      (Seal)
"F. T. CALEY.        (Seal)

"We, the undersigned, hereby agree and consent to the

execution of this lease, provided all of the conditions of the foregoing lease are complied with.

> " O. P. JACKSON.
> " PAT. McDERMOT.
> > "Per JACKSON.
> "J. E. PAUL.
> "WM. MONROE.
> > " Per JACKSON."

This suit was commenced on February 11, 1896, within a few days after the expiration of the sublease, and was brought to recover the sum of $1,500, the deferred additional payment provided for in the assignment. The case was submitted upon an agreed oral statement of facts, which in addition to those above stated, were substantially that the defendant paid the sum of $1,000 required by the assignment; that he took possession of the property and commenced work thereon, and prosecuted the same until about December 19 following; that his mining operations did not pay, but on the contrary resulted in a financial loss to him of several thousand dollars; that about said December 19, defendant sold to Henry Wolcott, who had become and was then the owner of the original lease out of which this sublease grew, the machinery erected and owned by him, defendant, on the premises, and permitted said Wolcott to take possession and operate the mining property, without, however, any sale or assignment of the sublease or leasehold estate, and with the express understanding that if during Wolcott's operations the sum of $1,500 in net proceeds was realized from his working, it should be paid to these plaintiffs; that Wolcott prosecuted work upon the property during the remaining life of defendant's sublease, but without realizing any net proceeds. There seems to be some dispute between the parties as to whether the statement of facts was to the effect that Wolcott was to pay to plaintiffs the $1,500 if so realized, or that the defendant was to pay it to them. We think the reasonable construction of the language of the attorneys in making the statement, as preserved

in the record, would be that the defendant was bound to, and would pay to plaintiffs the $1,500 if so realized from the net proceeds of the working by Wolcott, but in the view which we take of the case, this is immaterial. The court found as a matter of fact that the defendant did turn over to Wolcott the premises leased, and thereby put it beyond his power to control and manage the premises, but there was no specific finding as to whether or not he sold or assigned his sublease to Wolcott. The court further found as a matter of law that by reason of said surrender or turning over of possession of the premises, the defendant became liable under his assignment from the plaintiffs, to pay to them the sum of $1,500. This was upon the theory that a person who voluntarily puts it out of his power to comply with the obligations of his contract, is liable to the same extent as if he had successfully carried it out. This rule of law is correct and sound in a proper case, but it is not applicable to the facts of this case, as we understand them from the record. The assignment contained no provision against subletting, and there was nothing in it nor the character of the work to be performed to indicate that the contract of assignment involved any relation of personal confidence such as to justify the conclusion that there was an intention of the parties that the work should be performed only by the defendant. Covenants against underletting are not to be presumed; in fact, they are not favorably regarded by the courts, and are construed liberally in favor of the lessee. Wood's Landlord and Tenant, § 321. Nor was there any provision for continuous working in the assignment. The words, "The said F. T. Caley agreeing to work said claim," do not call for continuous working. All that they did require was a reasonable amount of work with reference to the object to be attained, to wit, the extraction at a profit of ores from the territory. If as appears to have been the case, after working the ground for a term of four months the defendant suffered serious loss and found that it could not be prosecuted at a profit, he might possibly for the remaining short term of the lease have absolutely abandoned

the work without incurring any liability to plaintiffs for the money which he was to have paid out of the profits if realized. It is true that the original lease which defendant assumed required certain work during each calendar month, and a failure of defendant to comply with this covenant might have forfeited the lease and permitted the re-entry of the original lessors if they had seen fit to take advantage of it, but we cannot see how this forfeiture of the lease under these circumstances could have inured to the benefit of these plaintiffs so as to have entitled them to recover from defendant an independent sum to have been paid to them if realized from the profits of working. The territory had been worked for more than four months without profits, and with no reasonable prospect of them. In an action between the owners and the defendant, the former might have insisted upon the doing of the work whether a profit was realized or not, because the work would be a development of the mine, and would be useful for future operations. This consideration, however, did not move to these plaintiffs. They had no interest in the development, but only in the realization of profits from ores extracted.

Even in another aspect of the case, we think that plaintiffs would not be entitled to recover. Under the facts of this case as agreed, it might be said that Wolcott was conducting mining operations for and under the defendant, at least until $1,500 of net profits should have been realized, and in such case, the work done by Wolcott was done, so far as these plaintiffs were concerned, by the defendant, and no profits having been realized during the term, they cannot complain.

The case was tried upon an agreed statement of facts, not in writing, but made orally by counsel in open court. The phraseology of the statement was somewhat loose and indefinite, and this gives rise to the dispute as to the material facts upon which the determination of the case must depend. Plaintiffs contend it was admitted that defendant sold his lease to Wolcott, thereby voluntarily placing it without his power to realize the amount of the conditional payment.

Defendant insists to the contrary.   We incline to agree with the contention of defendant, and the views which we have expressed are based upon that theory.   In any event it was incumbent upon plaintiffs to establish this fact before they could claim the liability of defendant had become absolute according to their own theory of the case, and the proof of it was not sufficiently clear and definite to sustain the judgment. In the new trial which must follow, the entire true state of the case may be definitely shown.

The judgment will be reversed.

*Reversed.*