[No. 2240.]

CALEY v. PORTLAND ET AL.

Mines and Mining—Lease—Assignment—Consideration.

Where a mining lease for a certain term was assigned, the assignee agreeing to work the mine and to pay the consideration out of the net proceeds, he was not required to work the mine continuously through the entire term of the lease at a loss, or else become absolutely liable for the amount of the consideration, but his obligation was fulfilled when he worked the mine sufficiently to show that it could not be worked at a profit. And where the assignment contained no provision against subletting, the assignee by reassigning the lease did not violate his contract nor put it out of his power to comply with it so as to make him absolutely liable for the amount of the consideration.

*Appeal from the District Court of El Paso County.*

Messrs. GUNNELL, CHINN & MILLER, for appellant.

Mr. H. McGARRY and Mr. J. C. HELM, for appellees.

GUNTER, J.

There is no substantial conflict in the evidence. Appellees, sublessees of certain mining property for a term—July 15, 1895, to February 8, 1896—made, with the consent of their lessors, the following assignment of their sublease.

"Victor, Colo.   *   *   *   This agreement made * * * by * * * James Portland and Matt. Mul-

ligan of the first part, and F. T. Caley, of the second part, in consideration of  *  *  *  one thousand dollars in hand paid, and  *  *  *  fifteen hundred dollars to be paid as hereinafter specified, do  *  *  * hereby sell,  *  *  *  unto the said F. T. Caley all the right, title, claim, interest of, in and to the mining claim and lease hereunto attached.  The said F. T. Caley agreeing to work said claim and to pay said Mulligan and Portland the said amount of fifteen hundred dollars out of the net proceeds of the said claim, they to have the full net proceeds until said sum of fifteen hundred dollars is paid in full to them.

"Witness our hands and seals this 20th day of August, 1895.       "JAMES PORTLAND,   [SEAL.]
                                 "MATT. MULLIGAN,   [SEAL.]
                                 "F. T. CALEY.       [SEAL.] "

The assignee, appellant, went into immediate possession. and with reasonable diligence and skill mined the demised premises until December 19, 1895, when he stopped operations and sold the mining machinery and tools and rights in the sublease to one Wolcott, who had become assignee of the original lease.  Wolcott paid appellant for the machinery, tools and assignment $2,500, and agreed as a further consideration to pay appellees whatever sum—not exceeding $1,500—he might realize net from the operation of the mine. He worked the property during the remainder of the term of the sublease without net returns.  Appellant during the four months he worked the property lost several thousand dollars in his operations.

There was no evidence that the property covered by the sublease could have been operated at a profit had it been mined with reasonable diligence and skill during the life of the sublease assigned to appellant. There was affirmative evidence that even though so mined the operations would not have been at a profit.

Two days after the expiration of the sublease—assigned as stated to appellant, and by him to Wolcott—appellees sued appellant for the $1,500, nominated in above agreement of August 20.

From the foregoing facts it appears that appellant operated this property with skill and diligence during four months in his effort to secure net returns at a loss of several thousand dollars. He then, about seven weeks before the expiration of the sublease, quit work, and assigned his interest therein to Wolcott, who, during the remainder of the term continued to work the property with skill and diligence, resulting in failure to obtain net proceeds.

Appellees constructed their complaint, tried the case below and secured judgment for the full amount claimed upon the theory that appellant by assigning the contract on December 19, violated it in that he put it out of his power to comply with the contract, and thereby became liable absolutely for the $1,500, stipulated to be paid out of the net proceeds of the mine.

This theory is relied on here to sustain the judgment below. This contention in practical results amounts to this: Although appellant had reasonably shown by mining the leased property during four months of the sublease that it could not be operated at a profit; that further operations would be attended with further loss to him, and no benefit to appellees, and although it appeared that appellees were not in any degree damaged by his cessation of work, yet, by his merely stopping work and assigning the sublease he was liable to appellees in the sum of $1,500, damages they never sustained. We think such is not the law. The principle upon which damages are awarded in actions for breach of contract is that of compensation to the injured party. A reasonable construction must be put upon the contract of August 20, between appellant and appellees, and it was so con-

strued at the former hearing in *Caley v. Portland et al.,* 12 Colo. App. 397, 56 Pac. 350, the court saying:

"The words, 'The said F. T. Caley agreeing to work said claim,' do not call for continuous working. All that they did require was a reasonable amount of work with reference to the object to be attained, to wit, the extraction at a profit of ores from the territory."

*C. F. & I. Company v. Pryor,* 25 Colo. 540, 549, 550, is pertinent. There the premises were demised for coal mining purposes, and the lessee covenanted to work the same. This it failed to do. The lessor sued and recovered damages upon the alleged breach of the contract to operate the mine. The judgment was reversed because the evidence failed to show that the mine could have been worked at a profit. The court *inter alia* said:

"By the transaction the lessor expected to receive compensation in the way of royalty, and the lessee profits from the operation of the leased premises as a coal mine; so that the benefits thus realized would be mutual. Unless coal was found of a merchantable grade which could be produced at a reasonable profit, or if that discovered was valueless, to require the lessee to mine it and pay royalty on the production would impose a burden without any benefits in return. The obligation was imposed upon the lessee to open the premises as a coal mine, and operate them as such, but in the absence of an express provision in the lease regarding what conditions should exist before a penalty would attach for a failure to observe this obligation, or under what circumstances it should comply with this provision, the law presumes that the parties to the lease, at the time of its execution, considered the purpose for which it was executed and the conditions under which it would be mutually beneficial to carry out its terms

and provisions, and, therefore, intended by the language employed to contract accordingly.—2 Parsons on Contracts, *499. The right to mine having been granted, the law. implies that the lessee should exercise reasonable diligence in working the mine—Koch's Appeal, 93 Pa. St. 434; but unless coal actually existed on the premises of a merchantable grade which could be produced at a reasonable profit, or, if none existed, or that which was found was valueless, then, under this contract of lease it would be under no such obligation.''

Under these authorities appellant was not required to work the leased property continuously, but to make a reasonable effort to mine it at a profit. Having made such effort, and having reasonably shown that it could not be worked at a profit within the life of his sublease at the time he quit work and made the assignment he had satisfied the requirements of the contract, and hence was not liable in damages for the cessation of work or assignment of the contract. Further, as the only alleged breach of the contract relied on for recovery is the assignment of the sublease by appellant to Wolcott, if the contract was assignable no breach of the contract was proven and the case must be reversed. This point was ruled in *Caley v. Portland et al., supra.* The court in speaking of the assignment of the sublease on August 20, said:

''The assignment contained no provision against subletting, and there was nothing in it nor the character of the work to be performed to indicate that the contract of assignment involved any relation of personal confidence such as to justify the conclusion that there was an intention of the parties that the work should be performed only by the defendant (Caley). Covenants against underletting are not to be presumed; in fact, they are not favorably re-

garded by the courts, and are construed liberally in favor of the lessee.—Wood's Landlord and Tenant, § 321.''

While such portion of the opinion was perhaps not essential to a decision of the point upon which the case turned, yet, it expressed the law. We think the contract was assignable; if so, its terms were not violated in making the asignment by appellant to Wolcott.

The judgment should be reversed.

*Reversed.*