[No. 5139.]
[No. 2730 C. A.]

MACON ET AL. v. TROWBRIDGE, ADMINISTRATOR OF THE ESTATE OF ELLIS.

1.  Mines and Mining—Bond and Lease—Royalties—Failure to Perform—Measure of Damages.

The terms of a bond and lease of mining property provided that the lessee should work and develop the premises in a miner-like fashion, and in a manner conformable to good and economical mining, and so as to take out the greatest amount of ore possible; that he should develop and mine the premises continuously from the date thereof; that a failure to do at least a specified amount of work each calendar month would be a violation of the covenants of the lease; and that the lessee should pay a certain royalty on all ores extracted. Held, that such lease imposed upon the lessee the obligation to work the mine in the manner specified, so long, at least, as he retains possession under the lease, or else to respond in damages for failure so to do; and the measure of damages would depend upon the amount of the ore that could have been mined if reasonable diligence had been exercised, and its value; in other words, whether there was ore that could have been mined and the leased premises operated at such profit, after deducting the stipulated royalties, as would be regarded fair and reasonable for ventures of this kind.—P. 334.

2.  Mines and Mining—Bond and Lease—Royalties—Failure to Perform—Damages—Pleading—Counterclaim.

In an action against the owner of a mine by a former lessee to foreclose a trust deed, the answer set up as a counterclaim

the failure of plaintiff to carry out the terms of a bond and lease, by the terms of which the plaintiff agreed to work and develop the premises in a miner-like fashion, and in a manner conformable to good and economical mining, and so as to take out the greatest amount of ore possible; that he would develop and mine the premises continuously from the date thereof; that a failure to do at least a certain amount of work in each calendar month would be a violation of the covenants of the lease; that he would pay a certain royalty on all ores extracted; that he was the general manager of an adjoining mine from which drifts and tunnels extended into the leased mine; that he had the right to use the shafts and tunnels of such mine in extracting ores from the leased mine, and could have extracted, by the performance of his covenants, from said leased mine great quantities of ore of great value, to wit, of $75,000; and that the sum which would then and there have been due and payable to defendant in that behalf would reasonably have amounted to $5,000. Held, that such averments were sufficient to admit evidence in support of the counterclaim, and the court's action in excluding such evidence constitutes reversible error.—P. 336.

*Appeal from the District Court of Fremont County.*
*Hon. M. S. Bailey, Judge.*

Action by Harry W. Trowbridge, administrator of the estate of Charles W. Ellis, deceased, against Augustus Macon and Virginia H. Macon. From a judgment for plaintiff, defendants appeal.

*Reversed.*

Mr. THOMAS MACON, for appellants.

Mr. H. L. McNAIR, for appellee.

This is an action brought to foreclose a trust deed given by appellants to secure a promissory note for $500 payable to Charles W. Ellis, dated November 25, 1896. Appellants admit the execution of the note and trust deed, but plead as a counterclaim, and as an offset to plaintiff's cause of action, damages sustained by them for the failure of Ellis to perform the covenants contained in a certain bond and lease, and to comply with the terms of a written agreement

made with reference to the note sued on. Briefly stated, the facts averred are as follows:

On April 1, 1899, Augustus Macon executed an agreement to sell and lease to Ellis an undivided 1-12 interest in the Augusta lode mining claim. The bond and lease was for the term of two years. The lease contained, *inter alia,* the following:

"Second. Said Charles W. Ellis agrees that, in the working and development of the said premises, he will conduct all his work in miner-like fashion, and in a manner conformable to good and economical mining, and so as to take out the greatest amount of ore possible, but always with due regard to the future development and preservation of the mine as a workable mine, and the special covenants hereinafter reserved."

"Third. Said Charles W. Ellis shall work, develop and mine the said premises steadily and continuously from the date of this lease, and any failure on his part to do at least ten shifts of work in each calendar month, underground, in and for the development of the said premises, will be a violation of this covenant."

"Eighth. The said Charles W. Ellis    *    *    * covenants and agrees to pay, on or before the 15th day of each calendar month, as royalty on all ores extracted from the said premises during the preceding calendar month, as follows:"    (A graded royalty based upon the value of the ore extracted.)

It is further averred that Ellis was the general manager of The Bassick Gold Mining Company, the then owners of the Maine mine, which adjoined the Augusta mine, and from which drifts and tunnels extended into the Augusta mine, and was a large stockholder therein, and that he had the right and authority to use the shafts, drifts and tunnels and appliances of the Maine mine for the working, min-

ing and developing and extracting ores found on the said Augusta mine, and that, by reason of the said facilities so granted, he (Ellis) was enabled to, and could have, by the faithful and honest performance of his covenants and agreements contained in the said lease, mined and "extracted from the said Augusta lode great quantities of said ore of great value, to wit, of the full value of $75,000, and that the sum which would then and there have been due and payable to the said defendant, Augustus Macon, in that behalf would reasonably have amounted to the full sum of $5,000."

It is further averred that, at the time of the execution of said lease and agreement to sell said premises, and as a consideration for, and an inducement to, the said Augustus Macon to execute the said lease, the said Ellis then and there executed and delivered to the said Augustus Macon an agreement which, after referring to the note sued on and the deed of trust upon 1-12 of the Augusta lode mining claim securing the same, and after reciting the execution and delivery of the bond and lease. contains the following:

"And, whereas, By the said agreements, the parties hereto have agreed that payment of said promissory note is hereby extended for the period of two years in consideration of the premises aforesaid. And it is hereby agreed that the royalties which may be due and payable to the party of the second part by the party of the first part under the terms and conditions of the lease aforesaid of the said interest in said Augusta lode shall be applied to the payment of the said promissory note until the principal and interest due thereon is fully paid; provided, the sum due for said royalty shall equal or exceed the said sum due said party of the first part by party of the second part as aforesaid, and that all royalties so

due shall be applied to the discharge of said sum so owing by the party of the second part as aforesaid, as fast as the same are payable, in pursuance of the terms of the lease hereinbefore mentioned, and that after the payment of said promissory note, together with the interest thereon, then the party of the first part promises to surrender and deliver the said promissory note to the party of the second part.''

The court below excluded the evidence offered in support of this counterclaim, thereby ruling that the answer and cross-complaint did not state facts sufficient to constitute a cause of action, and rendered judgment for the amount of the note and interest and a decree foreclosing the trust deed. From this judgment and decree appellants bring the case here for review.

Mr. Justice Goddard delivered the opinion of the court:

The only question presented for our consideration is whether the court erred in excluding evidence in support of the cross-complaint upon the ground that it did not state facts sufficient to constitute a cause of action. It is contended by counsel for appellee that, under the lease, it was optional for appellee whether he would comply with its requirements as to working and developing the property, and that, for his failure to comply with these provisions, the only remedy the lessor was entitled to avail himself of was to forfeit the lease. In other words, that these requirements were merely conditions which, if complied with, gave Ellis the right to possession of the premises, and imposed upon him the duty only to pay the royalty agreed upon in case he mined and shipped ore therefrom.

We do not so understand the law applicable to leases of this character, but rather that these require-

ments impose upon the lessee the obligation to work the mine in the manner specified, so long, at least, as he retains possession under the lease. In *Koch's Appeal*, 93 Pa. St. 434, the rule is thus stated:

"Where a right to mine iron ore or other minerals is granted, in consideration of the reservation of a certain proportion of the product to the grantor, the law implies a covenant on the part of the grantee to work the mine in a proper manner and with reasonable diligence, so that the grantor may receive the compensation or income which both parties must have had in contemplation when the agreement was entered into."

In construing a lease, as in construing any other contract, the first question to determine is what the parties thereto understood and intended, as determined by the words employed, and as an aid to the ascertainment of this intent the situation of the parties, the subject-matter of the contract, and the purpose to be accomplished should be taken into consideration. Applying this rule to the lease under consideration, it was very clearly within the intendment of the parties that this interest covered by the lease should be worked for the purpose of benefiting both the lessee and the lessor, and with the expectation that the royalties reserved would, at least, satisfy the note as provided in the written agreement, and that the expectation or anticipation of receiving such benefit was a strong inducement for the appellee to grant the lease in question.

The failure, therefore, of the lessee to work and develop the property as provided rendered him liable for such damages as the appellants could show they suffered by reason of such failure. The amount of such recovery, if any, would depend upon the amount of ore that could have been mined, if reasonable diligence had been exercised, and its value; in other

words, whether there was ore that could have been mined and the leased premises operated at such profit, after deducting the stipulated royalties, as would be regarded fair and reasonable for ventures of this kind.—*C. F. & I. Co. v. Pryor*, 25 Colo. 540.

The averments of the answer were sufficient to admit of proof of this character. We think, therefore, the court erred in excluding evidence thereunder. The judgment is reversed, and the cause remanded for a new trial.

*Reversed and remanded.*

CHIEF JUSTICE GABBERT and Mr. JUSTICE BAILEY concur.