## CHARLES HOWELL v. CUYUNA NORTHERN RAILWAY COMPANY.[1]

### December 11, 1914.

### Nos. 18,914—(123).

**Mineral lease construed.**

    1. A lease of real property construed and *held* to confer upon the lessee

[1] Reported in 149 N. W. 942.

Note.—Upon the right of the owner or lessee of mineral in place as to the use of the surface, see note in 48 L.R.A.(N.S.) 883.

the right to explore for, remove and transport to market, all iron ore found therein, and such additional rights of possession and control of the premises as are necessary to the proper conduct of the mining operations.

**Same — possessory action by owner.**
2. Except insofar as necessary to such mining operations the lessor, the fee owner of the land, retains the right of possession of the surface of the land and may maintain an action against any third person entering into the possession thereof without right or authority.

**Same — construction of railroad.**
3. The lessee, though the lease grants him the right to construct upon the premises all facilities necessary to market the ore taken from the land, including railroads, has no right to authorize the construction of a railroad upon the premises, except for the purpose of aiding in the mining operations and the transportation of ore to market.

Action in the district court for Crow Wing county to recover possession of land or $11,300 damages caused by the construction of a railroad upon it. The facts are stated in the opinion. The case was tried before McClenahan, J., who ordered judgment on the pleadings in favor of defendant. From the judgment entered pursuant to the order for judgment, plaintiff appealed. Reversed and new trial granted.

*Clapp & Randall,* for appellant.
*C. W. Bunn* and *D. F. Lyons,* for respondent.

BROWN, C. J.

The complaint in this action alleges, in substance and effect, that during all the times therein stated plaintiff was and still is the owner and entitled to the possession of the land mentioned therein, and that on September 1, 1908, defendant wrongfully and unlawfully entered upon the land and constructed thereon a line of railroad and ever since has operated it as a common carrier for general commercial purposes; that no proceedings were ever had or taken to acquire the right to so occupy the land and no damages were ever assessed or paid therefor; that the land so taken is of the value of $2,000, and that the reasonable value of the use thereof since it was so taken by defendant is the sum of $1,000. The demand for relief is that

127 M.—31.

plaintiff have judgment for the possession of the land or, in lieu thereof, damages in the sum of $11,300. Defendant answered admitting plaintiff's ownership of the land, and the construction thereon of its line of railroad, and the operation of the same as alleged in the complaint; admitting also that no damages have ever been ascertained or paid to plaintiff for the right thus taken, and alleging in defense and justification that the road was so constructed upon the land "upon the request and with the express consent and authority of plaintiff's lessee, the Northwestern Improvement Company," and that defendant's occupancy of the land is with the full authority of that company. Defendant further alleged that plaintiff, prior to the act complained of, leased the land to the Howell Mining Co., which company subsequently sublet to the improvement company. A copy of the lease was attached to and made a part of the answer. The reply admitted the lease and the rights granted thereby, and that defendant constructed its line of road upon the land at the request and with the authority and consent of the lessee, the improvement company. All other allegations of the answer were denied.

When the cause came on for trial the court granted defendant's motion for judgment on the pleadings. Judgment was so entered and plaintiff appealed.

It is the contention of defendant that the lease in question granted to the improvement company for the term of 50 years the exclusive right of possession of the land, that plaintiff, the fee owner, has no present right of possession and cannot therefore maintain an action either in ejectment or for damages against this defendant, who holds under the improvement company. Whether this contention is sound depends upon the construction to be given the lease, and the determination of the question whether it is anything more than an ordinary mining lease, granting to the company the right of possession and control of the land insofar as necessary to remove iron ore therefrom. If the latter, it would seem clear that the improvement company would have no right to grant surface rights to third persons, the rights so granted having no reference to or in furtherance of the mining operations. In other words, the company would not be authorized if that be the construction of the lease to impose upon the

land an additional servitude, having no relation to the mining or transportation of the iron ore.

The lease treats fully of the rights of the parties, and provides that, in consideration of the covenants therein contained, the land is leased and let to the improvement company for the term of 50 years from the first day of September, 1908; it authorizes the lessee to explore for, mine and remove the merchantable iron ore which is or may be found deposited in or upon the land; "and to construct all buildings, make all excavations, openings, ditches, drains, railroads, wagon roads, and other improvements thereon suitable for the mining and removal of iron ore; and may cut and use timber from the leased premises for the purpose of carrying on any operation, or constructing, repairing or carrying on any building or work authorized by this lease." It further provides that at certain stated times the lessee shall pay to the lessor for all ore taken from the land at the rate of twenty cents per ton of 2,240 pounds; and pay for 5,000 tons of ore each year whether mined or not. It also requires the lessee to furnish the lessor with monthly statements showing the quantity and amount of ore taken from the land; and that the lessee shall pay all taxes assessed against the land, or improvements thereon, or iron ore produced therefrom. It provides that the lessee shall open, use and work the mines in such manner only as is usual and customary in skilful and proper mining operations of similar character; that the lessor may enter upon the premises for the purpose of inspecting the mining operations and measuring the quantity of ore taken or removed, "not unnecessarily or unreasonably hindering or interrupting the operations of the lessee." It gives the lessor a lien upon all ore taken from the mine, and all improvements upon the premises as security for the payment of the royalties for ore taken out. The lessor is given the option to terminate the lease at any time upon 90 days' notice, and when so terminated, or at the expiration of the term of the lease, the lessee agrees to surrender possession of the premises to the lessor; in the meantime the lessor covenants to defend the title and the right of possession in the lessee.

The foregoing embodies substantially all the elements of the contract which are relevant to the question of its construction as respects

the present controversy. We are unable, after a somewhat careful consideration of the matter, to construe the lease otherwise than an ordinary mining lease, by which the rights conferred upon the lessee relate to and are confined exclusively to mining operations, and granting to it such right of exclusive possession as may be necessary to the conduct of the same. The question would seem to be controlled by Diamond Iron Mining Co. v. Buckeye Iron Mining Co. 70 Minn. 500, 73 N. W. 507, where a similar contract or lease was construed and held to vest in the lessor a right to payment of royalties only in the event that iron ore was found upon the land; that the lease was not one for the general use and possession of the land but one for mining purposes only, and, there being no ore to mine, there was no liability on the part of the lessee to pay royalties on a given number of tons of ore whether mined or not. The same stipulation is found in the lease here involved. While the lease involved in that case stated that the premises were leased for mining purposes, and no such express language is found in the lease here before the court, we are unable to hold that this fact differentiates the cases. It is manifest, taking this lease as a whole, that the sole purpose was to vest in the lessee mining privileges only. Under the rule of that case the improvement company in the case at bar could not be compelled to pay royalties unless ore was present in the land, suitable for marketing, from which it necessarily follows that the parties did not intend to confer upon the lessee all surface rights, or the exclusive right of possession. It seems clear that the lessee could not, though the lease contains a clause permitting a sublease, sublet the premises for agricultural or for any other purpose not connected with and having some relation to the mining operations. If this be true, and there would seem no sufficient answer to it, it follows that the right of possession and control of the premises remained in the lessor insofar as not inconsistent with or obstructive of the rights of the lessee in working the mine. Erickson v. Iron Co. 50 Mich. 604, 16 N W. 161; 3 Lindley, Mines, § 813; Fowler v. Delaplain, 79 Oh St. 279, 87 N. E. 260, 21 L.R.A.(N.S.) 100.

It is true that the lease authorizes the lessee to construct build ings, railroads and wagon roads, and such other facilities as may b

necessary to a successful operation of the mine, but it does not appear from the answer that such was the purpose of the railroad in question. So far as disclosed by the pleadings the railroad was constructed for the purpose of general traffic, and has no relation to the shipment of ore from the land. The construction of the road upon the premises was, therefore, an unlawful encroachment upon the paramount estate of plaintiff, the lessor, an appropriation of his property for a purpose not contemplated or authorized by the lease, for which he is entitled to redress. We do not consider whether, or to what extent, the terms of the lease would be violated by the construction of the road, if it shall appear that the purpose thereof was the transportation of the ore to market in connection with the general traffic of the company. If the construction of the road was for that double purpose, even though an additional servitude upon the land by reason of the general commercial traffic conducted by it, and therefore perhaps a technical violation of plaintiff's rights, it would seem that the damages claimed should be very substantially reduced.

Judgment reversed and new trial granted.