PARISH OF ORLEANS

VS

MRS. FRED FRANZ & AL,
APPELLANT.

March 22d, 1920.

CHARLES F. CLAIBORNE, JUDGE.

This is a suit under the injunction and abatement Act No. 47 of 1918 p. 67. The suit was filed on July 23rd, 1919 in the name of the District Attorney. He alleged that Mrs. Fred Franz was the owner of the property No. 228 North Rampart Street in the City of New Orleans; that A. Richman and Mrs. Jack Richman were the tenants of said premises; that prostitution was carried on in said premises in violation of Act 47 of 1918; that said building was used for said purpose on or about July 5th, 1919; that said premises bear the general reputation of being a place where prostitution is carried on, and that all the acts charged in this petition constitute a nuisance within the law. He prayed for an injunction enjoining Mrs. Fred Franz and A. Richman and Mrs. Jack Richman from further continuing prostitution on said premises, and for an order of abatement closing up the premises against their use for one year.

The defendant, Mrs. Franz, excepted that she was a married woman and could not be sued without the authorization of her husband. This exception was overruled.

This defendant then answered. She admitted that she was the owner of the property 228 Rampart; that she had been told that one A. Richman and his wife occupied said premises; that for lack of information she denied the allegations that said premises were used for prostitution, or that said premises bore the reputation of being a resort for prostitutes; she further alleged that she had purchased said premises on July 5th, 1919; that the former owner had collected the rent for the month of July in advance; that she had visited said premises only once and that was on the day before this suit was filed, for the purpose of notifying the tenants to vacate on August 1st, 1919, as it was her intention to

377

convert the building into a store for commercial purposes.

There was judgment against all three defendants; Mrs.
Franz alone has appealed.

## I

The exception of Mrs. Franz "that she is a married woman
and cannot be sued without the authorization of her husband" is
not well taken at this date.  It is true, as stated by her coun-
sel, that Article 118 of the Code of Practice and Article 121 of
the Civil Code of 1870 provide that a suit against a married wo-
man "must be brought both against her and her husband", and that
"the wife cannot appear in Court without the authority of her
husband"; but Act 244 of 1918 p 435, as we interpret it, has re-
moved these disabilities.  The act reads as follows:

> "Section 1.  Be it enacted &c  "That a married woman,
> whether a resident of this State or not, shall be compe-
> tent to contract debts, purchase, sell and mortgage, and
> to bind and obligate herself personally with reference
> to her separate and paraphernal property, and to appear
> in courts and to sue and be sued, to the same extent and
> in the same manner as though she were a femme sole."

Under that statute, although her ability as a wife, to
contract as a femme sole is restricted to her separate property,
her power to appear in courts to sue and be sued is general and
unlimited, and dispenses with the necessity of joining the hus-
band as defendant or of obtaining his authorization.

## II .

The law under which this suit is prosecuted is in the
following words:

> "Sec. 1.  Be it enacted &c:  That any building, struc-
> ture, land or other place in this State, in or upon which,
> or in or upon any part of which, assignation or prosti-
> tution is carried on, conducted, continued or permitted,
> or exists, and the furniture, fixtures, equipment and
> musical instruments therein and other contents thereof
> are declared to be nuisances, and shall be enjoined and
> abated as herein provided; and the owner of any building,
> structure, land, or other place in this State, and the

officers of any corporation which is the owner, and the
agent, representative and employee of any owner, and the
lessee, sublessee or other occupants of any building,
structure, land or other place on or upon which, or in
or upon any part of which, assignation, or prostitution
is carried on, conducted, continued or permitted, or exists
shall be guilty of maintaining a nuisance, and shall be en-
joined as herein provided".

"Sec 4: That if the existence of the nuisance be
established in an action under the provisions of this Act,
an order of Abatement shall be entered as a part of the
judgment in the case, which order shall direct the effectual
closing of the building, structure, land or other place
against its use for any purpose for the period of one year,
unless sooner released &c."

"Sec. 7: That on hearing in any action filed under
the provisions of this act evidence of the general reputa-
tion of the building, structure, land or other place, or of
the defendant or of the occupants thereof or habitual visi-
tors thereto shall be admissible and judgment may be based
on the general reputation so proven".

Upon the trial of the case four members of the Detective
department of the Police force of the City were examined as wit-
nesses. They all testified that the property 228 North Rampart
Street had the reputation of being, and was a house of prostitu-
tion; that it had been raided three or fourm times within the last
eight months; that the defendant, Mrs. Richman, had been arrested,
convicted, and fined by the United States Court for operating an
immoral house; that on the night of July 5th, 1919 they had the
house under surveillance; they saw a notorious prostitute enter the
house in company with a man; they entered the house and arrested
the woman; they went into another room where they found a man in
scant garments in company with another woman whom they knew to be
also a prostitute, and whom they arrested also; they had also
seen them enter the house.

The man arrested with one of the woman testified that he
had been solicited by one of the women and went up to the house
with her.

This evidence is sufficient to establish conclusively that the house No. 228 North Rampart Street was one "in which prostitution was carried on" at least up to and including July 5th, 1919 the day upon which the act of sale to the defendant was passed.

The defendant's answer to this proof is twofold, following the lines of her answer: 1o That she had visited said house only once, and that was the day before this suit was filed, for the purpose of notifying the tenants to vacate, and that she intended to remodel the building and convert it into a store; and she denied that the house was conducted for immoral purposes at any time, but if it was, she argued, that she could not be made liable for the illegal acts of the previous owner.

As to the first part of this defense, there is not a particle of testimony upon the subject of Mrs. Franz's visit to the house at any time, or that she ever, at any time, notified the tenants to vacate, or that she intended or had taken any steps to remodel the building. It does not appear from the transcript that Mrs. Franz appeared as a witness or testified in the case at all. The only evidence offered in her behalf was the act of sale to her, and the testimony of her husband. He testified that they bought the house at auction a day or so before the act of sale; that he had never been in the place; that he did not know its reputation and never made any effort to find out; that Jack Richman and his wife had moved out on July 29 or 30th. This is not sufficient to prove that no immorality was committed in that house after July 5th. and up to July 23rd when this suit was filed. When certain conditions are proven to have existed upon a certain date, the presumption is that those conditions have continued normally, and the burden of proof is upon the party who alleges that they have changed. *Cv 50a 551 —* 1 Green, § 41; 1 H. D., 490 (4). Mrs. Franz has produced no evidence of a change of conditions, nor of an intention to change them. Mrs. Richman and her husband may have left of their own accord, or impelled by this suit against them. But on the contrary there is positive evidence of continuing immorality after July 5th and up to a few days before the trial of this case. Two of the detectives testify that since July 5th they had seen the tenants, Mr. and Mrs. Richman, in the same house and up to a few days before the trial, and that they had also seen one of the prostitutes mentioned above coming out of the house since July 5th, and accost men on the street, and that they had also arrested her since that time, and that she continued to give her residence as No. 228 North Rampart Street. This established conclusively that the law was continuously violated up to July 23rd, 1919 the day this suit was filed, Indeed every continuance of a nuisance is held to

*22 Am + Eng. Enc. Law 1236 V - 1239-4-b-note 13*

*By 50a 551 the point that: "It is quite true that the use of the house for the purpose forbidden by the ordinance once found, is presumed to continue until this proof..."*

380

be a fresh one.  3 Blackston. §229

## III.

The next contention of Mrs. Franz is that she had no knowledge that the No. 226 North Rampart Street was conducted as a house of prostitution. We do not find it necessary to decide the much vexed question whether such knowledge was an essential prerequisite to a judgment against her, as we have come to the conclusion, from the evidence, that she had such knowledge.  It should is not necessary that the fact of knowledge be proven conclusively on account of the occult and mysterious character of the occupation, and the difficulty of procuring witnesses, and as such a rule would tend to destroy the usefulness of the law —; knowledge may be inferred from all the circumstances of the case,

The notorious reputation of the house, the character of the inmates and visitors, give rise to the presumption that any one, and particularly one investing her money in the purchase of the house, knew or could or should have known the real facts about the house.  This presumption is made conclusive by the failure of the defendant to testify and deny knowledge of any immoral reputation or conduct, clearly alleged in the petition and testified to by five witnesses upon the trial of the case, presumably in her presence, and certainly in the presence of her attorney.  If the absence of knowledge on the part of his client was considered by him a material issue, the presumption is that he would have taken her testimony.  It is a rule of law that when a party to a suit fails to testify as to certain facts known to him and important to the determination of a suit the presumption is that his testimony upon this point would have been against him.  117 La., 286 (292); 118 La., 611; 106 La., 587; 52 A., 1719.

When it is a well established fact that a house has been used continuously for purposes of prostitution the statute should be liberally construed. 149 N.W., 413.

Proof of the ill reputation of a house, or of the inmates, or of persons resorting there, constitute presumptive evidence that the house is so used with the knowledge of the owner. 155 Pac.,581; 149 S.W.,942; 125 Minn.,95; 147 N.W., 953; Burglass vs. Boyd No. 7556 Ct. App. 4 N.E. 461-29 S.W. 784.

The judgment of the trial Court was in favor of plaintiff and we cannot say that he erred.

Judgment Affirmed.