## No. 11,760.

Iowa Gold Mining and Milling Company *v.* Mears.

Decided December 5, 1927.   Rehearing denied December 27, 1927.

Action for damages for alleged breach of covenants of a mining lease.   Judgment for defendant.

### *Affirmed.*

1.   Lessor and Lessee—*Redelivery of Premises—Fixtures.*   In an action by lessor for damages for failure of lessee to deliver certain transformers installed on the property to lessor on termination of the lease, it is held that plaintiff could not recover, it appearing that the transformers did not belong to the lessor and were not attached to the realty as fixtures.

2.   Mines and Mining—*Lease—Construction.*   Because of the nature of the mining business, provisions in mining leases requiring work to be done by the lessee are viewed somewhat differently from similar provisions in leases of other property, and are given a construction more favorable to the lessee.

3.   Lessor and Lessee—*Mining Lease—Breach.*   A lessee exercised his right to terminate a mining lease without installing certain improvements in a mill on the property as agreed.   By a supplement to the lease it had been agreed that in respect to these improvements its terms should be suspended until August 15, 1923.   Three days after this date lessee gave notice of his election to terminate the lease.   Under the facts disclosed, it is held that plaintiff could not recover for this breach.

*Error to the District Court of San Juan County, Hon. W. N. Searcy, Judge.*

Messrs. Morrison & DeSoto, for plaintiff in error.

Mr. Frank L. Ross, for defendant in error.

*Department Two.*

Mr. Justice Butler delivered the opinion of the court.

The plaintiff in error sued the defendant in error to recover damages for alleged breaches of the covenants in a lease, wherein the former was lessor and the latter was lessee.

1. The first count alleges a breach of a covenant to deliver the leased premises, upon termination of the lease, in good order and condition and ready for immediate continued working and operation. The breach alleged is a failure to deliver certain transformers that were upon the property at the time the property was leased to the defendant. In this count, the plaintiff sought to recover damages in the sum of $5,928. The plaintiff never owned the transformers. They were placed upon the leased mining property under the following circumstances: In 1914 the plaintiff leased to the defendant and two others for five years the Iowa Tiger mine and mill, near Silverton. The Western Colorado Power Company supplied electric power for the operation of mines and mills in that locality. In the course of its business, it extended a wire to this property and installed transformers. It did not part with its title thereto, but merely placed the transformers on the property to enable it to furnish electric power to operate the mine and mill. These transformers were on the property when the lease was executed. In January, 1918, they were destroyed by fire. The lessees applied to the Power Company to install new ones. The company, however, did not have them on hand, so the lessees rented from the Dora Consolidated Mining Company one set and from one Pitcher another set; and

these the Power Company installed at the Tiger mine and mill. The owners never parted with their title to the transformers. They charged the lessees rent for their use. The trial court found that the transformers "were rented from outside persons, owners thereof," and that "they were not attached to the real estate in the ordinary sense of attaching improvements." The lease of 1914 expired on November 20, 1919. On May 5, 1919, the plaintiff leased to the defendant the same property for 5 years commencing November 20, 1919. The transformers were still on the property. Pursuant to a provision in the lease, the defendant terminated the lease October 2, 1923. Before that date, Pitcher removed from the leased premises the transformers that he had rented to the defendant and to the former lessees; and later the Dora Company removed from the premises the transformers that it had rented to the defendant and to the former lessees. In his opinion, the trial judge said: "Concerning the lease as a whole, and taking into consideration simply those surrounding facts and circumstances which must always be considered in applying any contract to the facts, I am unable to see how the plaintiff can recover from this defendant for the cost of transformers which it did not own and had no right to believe that it owned."

We agree with the trial judge. If the former lessees had rented of a telephone company a telephone instrument; and it was installed in the mine office and was there when the defendant received his lease; and the telephone company continued to rent the instrument to the defendant; and the instrument was removed by the owner, the telephone company; surely it could not successfully be contended that such removal would give to the plaintiff a right of action against the defendant for the value of the instrument. There would seem to be no difference in principle between such a case and the one at bar.

2. In the second count, the plaintiff seeks to recover $20,000 for an alleged breach of a covenant to install a ball or tube mill and a Dorr Continuous Thickener. The lease required that this should be done "as soon and as expeditiously as may be possible after" November 10, 1919. For several reasons operations on the mine were interrupted, and several extensions of time to perform work were granted to enable the defendant to procure sublessees. There was evidence tending to show that the ore had become of poorer grade than formerly, and that for this and other reasons the mine could not be worked at a profit. In December, 1920, it became necessary to close down the mine, the manager complaining to the plaintiff that to carry on operations would entail a loss of $5,000 per month. Finally, on June 22, 1923, a supplemental agreement was made. Paragraph 2 is as follows: "That it is hereby mutually agreed and understood that all operations under said lease ceased on or about May 1, 1923, and that the terms and conditions of said lease are hereby suspended from said May 1, until the 15th day of August, 1923, or until such time prior to August 15, 1923, as said lessee may resume operations hereunder and under said lease."

The effect of this agreement was to change the date, in the covenant sued upon, from November 10, 1919, to August 15, 1923, so as to provide that the ball or tube mill and the thickener shall be installed as soon and as expeditiously as may be possible after August 15, 1923. On August 18, 1923, exercising a right given him in paragraph 15 of the lease, the defendant gave to the plaintiff notice of his termination of the lease, to be effective October 2, 1923, the lease requiring a notice of 45 days. The purpose of installing this machinery, which, the plaintiff claims, would cost $20,000, was to increase the royalties of the lessor and the profits of the lessee. Because of the nature of the mining business, the provisions in mining leases, requiring work to be done by the lessee, are viewed somewhat differently from

similar provisions in leases of city property and similar property, and are given a construction more favorable to the lessee. *Colorado Fuel & I. Co. v. Pryor,* 25 Colo. 540, 57 Pac. 51; *Macon v. Trowbridge,* 38 Colo. 330, 87 Pac. 1147; *Caley v. Portland,* 18 Colo. App. 390, 71 Pac. 892. There was some evidence to the effect that the addition of the ball or tube mill and the thickener would not have increased the efficiency of the mill, would not have added anything to the saving of values of the ore treated, and would not have added anything to the value of the mill except in the event of the junking of the mill. The covenant in question must be considered in connection with paragraph 15 of the lease, which provides: ''That the lessee shall have the right, at any time before the expiration of the term hereof, to terminate this lease upon giving to the lessor not less than forty-five (45) days' notice in writing of his intention to terminate the same   *   *   *.'' Suppose that the day after the lease was executed, the defendant gave such notice. Could the plaintiff recover damages for the defendant's failing to install the machinery? Clearly he could not. Would the result be different if the defendant gave such notice on, or two or three days after, November 10, 1919? We think not. The supplemental agreement of June 22, 1923, as we have seen, postponed the date from November 10, 1919, to August 15, 1923. The trial court found that, by practical construction, the parties gave to the words of the covenant ''a meaning equivalent to 'a reasonable time considering the nature of the enterprise.' '' But the defendant had concluded to abandon the enterprise, and only three days after August 15, 1923, he gave notice of his election to terminate the lease. Considering all the circumstances, did the covenant bind the defendant, after giving that notice, to spend the remaining 45 days of the term in installing costly machinery, of no use to him, of doubtful benefit to the plaintiff, and perhaps, according to one witness, adding nothing to the value of the mill except as junk? It was the trial court's opinion,

and it is our opinion, that it did not. It does not appear that the machinery could be procured and installed within 45 days. Whether it could be installed within that time, or whether it would require 3 or 4 months, or longer, we are not advised.

The trial court properly found the issues on the second cause of action in favor of the defendant.

The judgment is affirmed.

Mr. Chief Justice Burke, Mr. Justice Adams and Mr. Justice Campbell concur.