## Blanton et al. v. Saylor et ux.

(Decided October 18, 1932.)

JAMES H. JEFFRIES, and E. H. JOHNSON for appellants.

FORESTER & CARTER, and N. R. PATTERSON for appellees.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming.

This appeal presents for consideration and determination a question of fact only. J. M. Blanton and wife, and Andrew Saylor and wife executed and delivered to the Indian Creek Coal Company a lease on 600 acres of land situated on Saylor's creek, Harlan county, Ky., for the purpose of mining the "Harlan seam of coal," thereunder. It was provided in the lease that the royalty was to be paid to J. M. Blanton and Andrew Saylor in proportion to the acreage re-

spectively owned and leased by them of the "Harlan seam," with the duty on them to ascertain the proportion of the acreage to which each was entitled, and submit it to the lessee, and according to which it was to pay the royalty. The Harlan-Wallins Coal Corporation acquired title to the lease and the coal rights thereunder. It began to mine and remove coal known as the "Harlan seam" in the year 1919. It continued to mine during the years 1920, 1921, 1922, 1923, 1924, 1925, 1926, 1927, and 1928, paying to Blanton and Saylor, each one-half of the royalty. Saylor filed this action against Blanton and his two daughters, alleging that they had been unable to agree on their respective acreage of the "Harlan seam," and that he was the owner of 173.4 acres in excess of one-half of the total acreage of the seam or 61.58 per cent. of the whole boundary of this seam, and that J. M. Blanton's and his daughters' acreage of the whole was 38.45 per cent. of the entire acreage of the seam. It is admitted in the pleadings that Saylor and J. M. Blanton jointly owned, each, one-half of the tract of land covered by the lease known as the Boreing tract, and each of them is entitled to one-half of the royalty of the seam mined thereunder. Saylor sought to recover his proportion of the royalty based on the acreage of the seam in the Boreing tract and all of the acreage under the 173.4 acres. The Blantons disputed the title of Saylor to a portion of the land claimed by him and asserted that they owned, in addition to one-half of the Boreing tract, 75 acres, or 54 5/11 of the acreage of the "Harlan seam." To deprive Saylor of 45 of his acreage of the seam, they asserted that under this 45 acres it was "so thin and filled with partings of rock, slate and dirt and other impurties, as to make it impossible to mine" it thereunder, that no part of the 45 acres contained merchantable coal, and that, in ascertaining and determining their acreage, the 45 acres should be deducted from the total acreage owned by him. They also asserted a prior and superior title to the 75 acres of the acreage of the seam to which Saylor also claimed title.

The trial court refused to deduct the 45 acres of the seam from the total acreage of Saylor. It decreed that Saylor's title was prior and superior to the title of Blantons to the 75 acres. They appeal, insisting the judgment of the court is not authorized or sustained by the evidence.

Without a detail of the evidence it is sufficient to say that there have been mined about 40 acres of the seam of which the 45 acres were a continuation in type and quality mined under the 40 acres. At the time of the execution of the lease, it was asserted and recognized by the lessors and the lessee that the seam under both the 40 and 45 acres was minable and merchantable and to be mined by the lessee under the lease. The seam thereunder is about 40 inches thick. After the 40 acres were mined, the market declined, and the mining of this character and type of the seam was discontinued by the lessee, because the mining thereof was unprofitable on account of the condition of the market. This is the only reason now urged by the Blantons for the deduction of the 45 acres of the seam from the entire acreage of Saylor. The rights of the parties in this respect must be measured and determined by the language of the lease.

In L. E. Tierney Land Co. v. Kingston-Pocahontas Coal Company, 241 Ky. 101, 43 S. W. (2d) 517, 520, it was written:

"The inability to mine at a profiit under normal circumstances is not due to anything that has happened to the quantity or quality of the seam as known and to be expected at the date of the lease, but to falling market prices that have occurred since that date."

The lease is an absolute obligation of the lessors to divide the royalty so long as the Harlan seam exists in quantity and quality as known at the date of the lease. The provisions of the lease put upon them the obligation to divide the royalty in proportion to their respective acreage of the seam on the land owned by them at the date of the lease, which can be mined by the lessee at a reasonable profit by skillfull and prudent methods of mining. The lease clearly requires the mining of the "Harlan seam" by the lessee under the 45 acres, and the payment of royalty arising therefrom according to the provisions of the lease, at least so long as the seam exists in quantity and quality as known at the date of the lease. The rule and the reason for the rule, enunciated in the last-cited case, apply and control the rights of Blantons and Saylor as to the 45 acres of the seam of coal. The pleadings contain no allegation, and no evidence is presented, authorizing a reformation of

the lease in this respect. In the absence of both allegation and proof, authorizing its reformation, none may be had. The court is unauthorized to make a contract for the parties. Dodson v. Powell, 185 Ky. 387, 215 S. W. 82; Triplett v. Bays, 224 Ky. 353, 6 S. W. (2d) 262.

Blantons assert title to the 75 acres in dispute, under a deed from Lloyd Saylor and others to Grover Blanton and others, which was executed and delivered by the grantors to the grantees on August 23, 1920, and recorded the 6th day of September, 1930. They endeavor to trace their title to a patent issued in 1891 to John M. and Andrew Saylor. The appellee Saylor asserts title under a deed to him from W. F. Hall and Lucy Hall, dated June 19, 1911, to 118 acres which by survey includes the 75 acres. The Halls claimed title under the "Boyd-Dickinson patent." Saylor accepted the deed of Halls for the purpose of removing a cloud on his title. He traces his paper title to the 118 acres, and connects it with a grant from the commonwealth. The evidence in behalf of Blantons shows that the 75-acre patent lies within the 118 acres, but it is exceedingly indefinite, uncertain, and not satisfactory. The surveyor who surveyed the 75 acres at the time it was patented by Andrew Saylor and J. M. Saylor was unable to locate its beginning corner except from information imparted to him by the Blantons. They claim that they received their information from Andrew Saylor. He denies he furnished them any information. The 118 acres were surveyed and mapped by N. R. Denham. His work was corroborated by Henry Groos. The Blanton 75 acres were surveyed and mapped by Aaron Creech. When making his survey, Creech located the first call in a "swag" and according to the information imparted to him by the Blantons. The beginning corner called for in the patent to the Saylors was in a drain. At the date of the patent to the 75 acres, Andrew Saylor was the owner under a patent granted by the commonwealth to a 50-acre tract which according to the location of the 75 acres by Creech included a portion of the 50 acres theretofore patented by Saylor. The 75 acres patented by him and his brother are not the 75 acres which were located by Creech's survey. Saylor establishes that he did not obtain a patent for this 75 acres, and that the patent he and his brother obtained was for another and an entirely different tract of land located at another

and different place. The title of Saylor to the 118 acres is established abundantly, and the evidence locating the 75 acres within the 118 acres is too indefinite and uncertain, wholly insufficient, to overcome his title.

The judgment of the chancellor is not against the preponderance of the evidence. Without giving weight to his finding it is our conclusion, on our own review and consideration of the evidence, that it fully authorizes and supports the judgment of the chancellor.

Judgment affirmed.