## ROCKY MOUNTAIN FUEL CO. v. ALBION REALTY & SECURITIES CO. et al.

### No. 892.

Circuit Court of Appeals, Tenth Circuit.
March 31, 1934.

Albert L. Vogl, of Denver, Colo. (Frank A. Wachob, of Denver, Colo., on the brief), for appellant.

Arthur H. Laws, of Denver, Colo. (G. C. Bartels, Walter W. Blood, and Paul P. Eagleton, all of Denver, Colo., on the brief), for appellees.

Before LEWIS, PHILLIPS, and McDERMOTT, Circuit Judges.

McDERMOTT, Circuit Judge.

The trial court held that the coal mining lease in suit imposed upon appellant an obligation to pay a minimum royalty, or dead rental, during the term of the lease; and that the fact, also found by the trial court, that the coal had so far played out that mining operations could no longer be carried on at a profit, was no defense to this absolute obligation. The correctness of that decision is the only question on this appeal and it turns upon the terms of the lease, construed in the light of the circumstances under which it was made.

On September 1, 1920, appellant was op-

erating the Acme Mine in Boulder County, Colorado; appellees owned land adjacent to the Acme Mine. On that date, the lease in question was entered into. The existence of coal under appellees' land was suspected but had not been proven by mining or drilling. The lease recites that "in consideration of the rents, covenants and agreements hereinafter expressed," the land is leased, let and demised to appellant "for coal mining purposes." The term is ten years, and the lessee agreed to develop the land diligently and continuously as a coal mine. The rental or royalty clauses are:

"2. The Lessee agrees to pay to the Lessors as a royalty for coal mined from said leased premises and as rental for said leased premises twelve and one-half cents (12½¢) per ton of two thousand pounds weight for all coal, mine run, mined from said leased premises during the term of this lease.

"3. The Lessee agrees to pay said royalty of twelve and one-half cents (12½¢) per ton of two thousand pounds weight on not less than sixteen hundred sixty-six and two thirds (1666⅔) tons of coal during each and every calendar month of the term of this lease whether coal is mined or not; provided, however, that if the Lessee shall in any month mine less coal than the minimum tonnage that a royalty is required to be paid on, and is paid on, in each month, then the difference in tonnage between the amount of said coal actually mined in said month and the minimum tonnage upon which royalty is to be, and has been paid on, may be mined and taken from said leased premises at any time during the term of this lease while the same is in full force and effect without the payment of further royalty thereon, but the Lessee shall in each calendar month pay the said royalty on said minimum tonnage hereinbefore required to be paid during each month; provided, however, that if no coal is mined hereunder prior to March 1st, 1921, that said minimum tonnage in this paragraph provided for shall not attach but this suspension for the payment of the minimum tonnage shall not in anywise alter the provisions of paragraph 2 that require payment of royalty on all coal actually mined.

"It is stipulated and agreed that should the development work or the mining of coal hereunder be at any time prevented by reason of any general labor strike in the Northern Colorado field not instigated or brought about by the connivance or concurrence of the lessee herein, then the payment of the minimum royalties herein provided for shall be suspended during such period of time as the mining of coal hereunder is prevented by any such strike; provided, however, that such suspension in the payment of said minimum royalties shall in no event be for a longer period than six months at any one time or in any one year."

In paragraph seven, appellees waived the right to "subjacent and adjacent" support of the surface, and to any damages suffered on account of the mining operations.

It will be observed that appellant was not obligated to pay the minimum royalty reserved, unless coal was mined from the lease prior to March 1, 1921. By this clause, appellant reserved six months in which to determine whether to obligate itself to pay the minimum royalty. The object of this reservation, undoubtedly, was to give appellant time thoroughly to explore the coal deposits by drilling. An unusually extensive drilling campaign was conducted and completed by February 8, 1921. That campaign demonstrating the existence of coal deposits satisfactory to appellant, it availed itself of its privilege under this clause, and mined coal prior to March 1, 1921. The minimum royalty clause therefore attached.

Appellant operated the mine with diligence from the time operations were commenced until the premises were abandoned on June 1, 1928. The minimum royalties reserved were paid each month during that period, save for the first three months of the lease, in which no royalty was paid, and for four months in the winter of 1927–1928, when royalties were paid only on the tonnage mined. In a letter written shortly prior to the abandonment of the property in 1928, appellant advised appellees that it was inadvisable to continue operating the Acme Mine. The reasons given in the letter are as follows:

"The large volume of water pumped adds very materially to operating expenses, and the market does not permit sufficient increased tonnage to overcome adverse operating conditions. Such production as the market does call for can be much more economically taken from other mines we operate."

After the expiration of the term of the lease, this action was brought to recover $6,957.26, the unpaid balance of the minimum royalty reserved, and $39,047.50, damages for failure diligently to develop. Appellant admitted the execution of the lease and the nonpayment of the minimum royalties sued for, but alleged that the workable coal, that is, coal which could be mined at a profit, was exhausted, although admitting that approxi-

mately 79,000 tons of recoverable coal remained. A trial by jury was waived, and much evidence introduced, largely directed to the question of whether the workable coal had been exhausted. The trial court found in favor of appellant on the issue of damages for failure to mine workable coal, but held appellant to the payment of the minimum royalties. There being no cross-appeal, this court is concerned only with the correctness of the decision as to minimum royalties.

The lease having to do with an interest in real property, pertinent decisions of the Supreme Court of Colorado, if any, are controlling. The researches of counsel and the court for such a decision have been unavailing. None of the Colorado cases cited involves a provision for a rental or a minimum royalty. In the case of Colorado Fuel & I. Co. v. Pryor, 25 Colo. 540, 57 P. 51, cited as controlling, the lessor recovered damages in the trial court for the failure of the lessee to comply with its covenant diligently to develop the leased premises. The judgment was reversed upon the ground that before there could be such recovery, the lessor must prove that there was merchantable coal remaining which could be mined at a profit. That decision does no more than recognize the established rule that where the purpose of a lease is to procure the mining of merchantable coal, it will not be construed as placing upon the lessee the burden of mining for coal that does not exist, since the other construction would put the lessee to useless expense without corresponding benefit to the lessor. In Macon v. Trowbridge, 38 Colo. 330, 87 P. 1147, the court held that where the proof disclosed that there was no coal to be mined under leased premises, there could be no damage for failure to mine it. The bearing of the other Colorado cases relied upon, Iowa G. M. & M. Co. v. Mears, 82 Colo. 577, 262 P. 519, and Caley v. Portland, 18 Colo. App. 390, 71 P. 892, is even more remote.

In the absence of controlling state decisions, it becomes necessary to construe the lease a priori.

Despite statements in some of the cases to the contrary, we can see no reason for construing mining leases differently from other contracts. In construing any contract, a court endeavors to put itself in the position of the parties when the contract was made, and in that light, to construe their contract with the single idea of effectuating the agreement which they made. Ordinarily the primary purpose of a mining lease is to provide for the recovery of the mineral; the provisions of the lease are construed with that purpose in mind; and in the absence of clear language to the contrary, the parties will not be held to have intended that useless mining operations shall continue after it is established that there is no ore left to mine.

There is no reason, however, to deny parties the right to make an absolute agreement to pay a fixed rental, or a minimum royalty, if they so desire. A clear and unambiguous provision in a mining lease to pay a sum certain during the term of the lease is a valid and enforceable provision. Lehigh Zinc & Iron Co. v. Bamford, 150 U. S. 665, 14 S. Ct. 219, 37 L. Ed. 1215; Moxham v. Sherwood Co. of W. Va. (C. C. A. 4) 267 F. 781; Tierney Land Co. v. Kingston-Pocahontas Coal Co., 241 Ky. 101, 43 S.W.(2d) 517; Blanton v. Saylor, 245 Ky. 321, 53 S.W.(2d) 699; Libby v. National Sewer Pipe Co., 196 Iowa, 1320, 195 N. W. 749; National Coal Co. v. Overholt, 81 W. Va. 427, 94 S. E. 735. Where such an agreement is made, it is no defense that because of unusual conditions mining operations cannot be carried on, or because mineral is not found in paying quantities, or because the mine develops no mineral at all. Libby v. National Sewer Pipe Co., supra; Beatie v. Rocky Branch Coal Co., 56 Mo. App. 221; Corona Coal & Coke Co. v. Dickinson, 261 Pa. 589, 104 A. 741; Ridgely v. Conewago Iron Co. (C. C.) 53 F. 988. Like other absolute agreements, discharge can only be had at law by performance.

Instead of an absolute agreement to pay a minimum royalty, the parties may agree that a minimum royalty provision shall be effective as long as there is ore left to be mined. Such provision has a twofold reason: It stimulates the performance of the primary covenant to develop, and it insures the lessor some return in lieu of the royalties which he would have had if development had been diligent. Such agreements are valid. Diamond Iron Min. Co. v. Buckeye Iron Min. Co., 70 Minn. 500, 73 N. W. 507; Howell v. Cuyuna Northern Ry. Co., 127 Minn. 480, 149 N. W. 942; Boyer v. Fulmer, 176 Pa. 282, 35 A. 235. Where a minimum royalty is construed as incidental to the primary obligation diligently to develop the property, and as an incentive to such diligent development, the exhaustion of the ore bodies relieves the lessee of its obligation to develop and its obligation to pay the minimum royalty incident thereto.

In determining to which of the two classes a covenant to pay a minimum royalty in a particular lease belongs, the entire

lease should be examined, and if necessary the circumstances under which it is made explored. If at the time the lease is made, the existence of a body of ore is suspected but not determined, the more reasonable construction of ambiguous language is that the parties intended the covenant to be an incentive to prompt development, but not to impose an absolute engagement to pay if the development discloses that there is no workable ore. On the other hand, if before the covenant is entered into or attaches, the parties have demonstrated the existence and extent of the ore, the more reasonable hypothesis is that the parties intended that the covenant should be absolute. That is the case here. The lessee had six months in which to determine the existence and extent of the coal under the leased premises; having conducted an exhaustive drilling campaign and satisfied itself of the existence and extent of the coal, it commenced actual mining operations, knowing that by so doing the minimum royalty provision attached.

We approach an examination of this lease in the light of the fact that the extent of the coal under the leased premises had been explored. The language of the royalty clause strongly supports the judgment of the trial court. By the first sentence of paragraph three, the lessee agrees to pay the minimum royalty "whether coal is mined or not." Unless the other provisions of the lease shed a different light upon this language, it should be construed to mean what it says. An examination of the other provisions fortifies the conclusion. In the latter part of the same paragraph, the parties agree that this absolute agreement shall not attach unless the lessee chooses to mine coal prior to March 1, 1921. There is considerable support for this construction in the strike clause of the lease. That clause provides for a qualified abatement of the minimum royalties in event mining is prevented by a strike over which appellant has no control. But it should be noted that such abatement is qualified in point of time, in that the minimum royalty provision shall not be abated for "more than six months at any one time, or in any one year." In other words, the parties agree that although mining operations should be absolutely prevented by a strike for several years, the minimum royalties should nevertheless be paid except for a limited period within that time. The lease describes the lessee's covenants as "a royalty for coal mined," and as "rental for said leased premises." The lease is made in consideration of "the rents," covenants, and agreements thereinafter expressed.

The lessors waive the right to "subjacent and adjacent" support of the surface, and release the lessee from any damage which may occur to the lessors on account of such lack of support. The proof discloses that there was some subsidence of the surface. While the lease was primarily for the purpose of mining coal, it contemplated a damage to the surface or parts thereof, which might not be compensated other than by the minimum royalty provision.

A critical examination of the entire lease convinces us that the trial court correctly construed its language. Resort to the surrounding circumstances—perhaps unnecessary in construing the clear language used—supports that construction.

Two subsidiary questions are presented. Although no issue was tendered by the answer as to the existence of a strike which would entitle the lessee to an abatement under the lease, one of appellant's witnesses testified that

"There was a strike in 1922-1923 and one in 1927-1928, in this mine. I am familiar with the provision of the lease suspending minimum royalties during strike periods. In 1927-1928 for October, November, December, and January, Exhibit 5 shows that the minimum royalty was not paid. That was the period of the strike."

It is contended that the trial court erred in including this period of the strike in the judgment. We think the trial court was correct for two reasons: In the first place, the evidence does not bring the months within the strike clause, for it does not establish either that there was any "general labor strike" or any strike which "prevented the mining of coal." Second, if the appellant expected to establish an exception to its liability on account of the strike clause, it should have afforded the appellees an opportunity of meeting the issue by pleading an abatement by reason thereof. Appellant also objects to including in the judgment unpaid royalties for the first three months of the lease, on the ground that since appellees had not asserted their right thereto prior to the filing of this suit, they should be held to have waived their claim thereto. No claim is made that these months stand upon any different footing than other months of the lease, nor that this action is barred by any applicable statute of limitations. What has heretofore been said applies to the first months of the lease as well as to the last.

We find no error in the judgment of the trial court and it is accordingly affirmed.