DIAMOND IRON MINING COMPANY v. BUCKEYE IRON MINING COM-
PANY.[1]

December 20, 1897.

Nos. 10,901—(192).

**Mining Lease—Covenant to Mine Certain Quantity of Ore or Pay
Royalty Thereon—Construction—Subject-Matter—"Merchantable
Shipping Iron Ore."**

The plaintiff executed to defendant a lease for a term of years of cer-
tain lands for the purpose of exploring for, mining, taking out and remov-
ing the merchantable shipping ore which is or may hereafter be found
on, in or under said lands, the defendant to pay the plaintiff a stipulated
sum per ton for all the iron ore mined and removed from the lands during
the term of the lease. The lease also contained a covenant by the lessee
that he would mine and remove from the lands at least a specified num-
ber of tons of ore each year, and that, if he should fail to mine that
amount in any one year, he would pay to the plaintiff an amount which,
when added to any amount previously paid as royalty for ore mined dur-
ing that year, should equal the royalty on the minimum quantity of ore
which he was required to mine that year; provided, however, that he
might mine and remove in any subsequent year, without other payment
therefor, a sufficient quantity of ore to offset the amount so paid in excess
of the quantity actually mined during such preceding year. The lease
further provided that the lessee might terminate the lease at any time on
sixty days' notice to the lessor. By diligent and sufficient search and
exploration on part of the lessee, it was demonstrated that there was no
merchantable shipping iron ore on the land. In an action by the lessor
to recover the minimum royalty, held, that "merchantable shipping iron
ore" was the subject-matter of the lease, and not mere matter of induce-
ment to its execution.

**Same—Covenant—Royalty—Payment for Ore—Nonexistence of Ore
a Defense.**

Also that the covenant to mine a specified quantity of ore each year, or,
upon failure to do so, to pay the royalty upon that amount, imposed an
obligation to pay for the stipulated quantity of ore, whether mined or
not; not whether it existed or not. In other words, it was not a covenant
to pay royalty whether the ore existed or not, but one to pay the royalty
if the ore existed, whether mined or not. Hence the nonexistence of the
ore was a defense to an action to recover the royalty.

[1] Reported in 73 N. W. 507.

Same—Right to Terminate—Failure to Exercise Right—Effect as to Defense.

    The fact that the defendant had not exercised its right to terminate the lease did not prevent it from availing itself of the defense that the royalty had not accrued due.

Action in the district court for Hennepin county to recover $7,500 rent under one lease (Exhibit A), and $2,500 rent under another lease (Exhibit B). The substance of the leases is given in the opinion. The case having been tried without a jury the court, Belden, J., found, among other facts, that the land described was practically of no value for any purpose unless for mining purposes, that there was no other use or occupation had of the land of any substantial value, and ordered judgment for plaintiff for the amounts claimed by plaintiff. From an order denying defendant's motion for a new trial, Johnson, J., defendant appealed. Remanded with directions to amend the conclusions of law and order for judgment.

*Washburn, Lewis & Bailey,* for appellant.

Among other cases the following were cited: Jackson v. Negaunee, 65 Fed. 298; Gribben v. Atkinson, 64 Mich. 651; Muhlenberg v. Henning, 116 Pa. St. 138, 144; McCahan v. Wharton, 121 Pa. St. 424; Carr v. Whitebreast, 88 Iowa, 136; Ridgely v. Conewago, 53 Fed. 988; Fritzler v. Robinson, 70 Iowa, 500; Walker v. Tucker, 70 Ill. 527, 537; Reed v. Beck, 66 Iowa, 21.

*Edwin S. Slater* and *Robert Christensen,* for respondent.

The contracts in question are leases of land, not licenses nor sales of ore, and the minimum payments reserved are due on account of rent of land. Abbot v. Smith, 19 D. C. 600; Lacey v. Newcomb, 95 Iowa, 287; Reynolds v. Hanna, 55 Fed. 783; Burr v. Spencer, 26 Conn. 159; Crane v. Patton, 57 Ark. 340; · McElwaine v. Brown (Pa. St.) 11 Atl. 453; Gilmore v. Ontario, 22 Hun, 391; Consolidated v. Peers, 150 Ill. 344. If the instruments in dispute are leases of land, plaintiff is entitled to rent, even though there was no ore in the land. Abbot v. Smith, supra; Clark v. Midland, 21 Mo. App. 58; Timlin v. Brown, 158 Pa. St. 606; Mellers v. Devonshire, 16 Beav. 252; Wharton v. Stoutenburgh, 46 N. J. L. 151; Ridgway v. Sneyd, Kay, 627; Bamford v. Lehigh, 33 Fed. 677; Mc-

Dowell v. Hendrix, 67 Ind. 513; Jervis v. Tomkinson, 1 Hurl. & N. 195; Palmer v. Wallbridge, 15 Can. Sup. Ct. 650; Marquis v. Thompson, 13 M. & W. 487; Buhl v. Thompson, 3 Pennypacker, 267.

MITCHELL, J.

The evidence in this case more than supports the findings of the trial court. Indeed, there is no substantial conflict in the evidence as to the facts, which were as follows: The plaintiff, being the owner of two 80-acre tracts of land, in April, 1893, executed to the defendant the "mining leases" Exhibits A and B of the complaint, which, so far as here material, are identical in their terms. The land was of no substantial or material value for any purpose unless for mining. Both parties executed these leases on the supposition that the premises contained large quantities of merchantable shipping iron ore, although at that time none had been actually found in the very partial and limited explorations which had been previously made by other parties.

Under these leases the defendant went on and expended $40,000 in erecting suitable and proper machinery, and in sinking shafts, drifting, crosscutting, exploring, etc., for the purpose of opening up and developing such iron mines or deposits of ore as might be found to exist on the lands. Such exploration and development work demonstrated the fact that no deposits (of any substantial value) of minable, merchantable shipping ore existed on the premises. In consequence of this the defendant abandoned operations, and never mined any ore except what was raised during the explorations, which has never been removed or shipped because of its unmerchantable quality. Although the defendant, for the reason given, abandoned operations, it has never removed its buildings and machinery or surrendered possession of the premises or given the plaintiff notice of its election to terminate the leases. The plaintiff brought this action to recover the amount of the "rent" or "minimum royalties" for the years ending February 1, 1895, and May 3, 1895, respectively.

The question of the liability of the defendant depends entirely upon the construction of the terms of the leases. Their material provisions are as follows:

The party of the first part [the plaintiff] "does hereby contract, lease and demise unto the party of the second part [the defendant], for the term of twenty-five years, the following described land, * * * which said premises are leased to the party of the second part for the purpose of exploring for, mining, taking out and removing therefrom the merchantable shipping iron ore which is or which may be hereafter found on, in or under said lands," together with the right to construct all buildings, make all excavations, openings, roads and other improvements which might be necessary or suitable for carrying on such mining operations, and the right to control the land so as to exclude disorderly persons, and all traffic in intoxicating liquors. It was further provided that the party of the second part should have the right at any time to terminate the leases on giving the party of the first part 60 days' notice of its intention to do so. Also that it should have the right to sublease for the purpose of mining ore, with the same rights to the sublessee "as herein granted to the party of the second part." The party of the second part, in consideration of the premises, covenanted and agreed that it would, on or before the 20th days of April, July, October and January of each year during the term of the leases pay to the party of the first part for all the iron ore mined and removed from the lands during the three months next preceding at the rate of 25 cents per ton. Also that it would pay all taxes on the lands, the improvements thereon, and the ore products thereof. Also that it would mine and remove from the lands each and every year "during the term and existence of this instrument" at least ten thousand tons of iron ore; it being further understood and agreed that, if it should fail at any time to remove that amount of ore from the lands in any one year, "it should pay to the party of the first part an amount which, when added to any amount previously paid by the party of the second part as royalties for iron ore mined and removed during the current year, shall equal the sum of $2,500, which payment shall be made in payments in proportion and at the times and in the manner hereinbefore specified; it being further understood that the party of the second part may mine or remove a sufficient quantity of ore in any subsequent year without other payment therefor, to offset the amount so paid at the prices hereinbefore agreed on: provided, in such subsequent year, the amount so mined and removed shall be in excess of the ten thousand tons which the party of the second part is obligated under this instrument to take and pay for annually."

In one of the leases the defendant agreed to pay on or before September 1, 1893, in addition to the sums above set forth, a "bonus" of ten thousand dollars, which the evidence shows had been paid. It was further covenanted that, if the party of the second

part should fail to work the mines to the extent of mining and removing at least ten thousand tons per year for three successive years, the party of the first part should have the right, at its option, to cancel and rescind the leases; also that, if any part of the royalty remained unpaid for sixty days after the time specified, it should have the right, at its option, to take possession of the premises. The party of the first part also reserved the right to enter the premises at any time for the purpose of inspecting them, or measuring the ore that had been mined; also the right of way for the construction and operation of one or more railroads across the premises, provided, however, that they should not materially interfere with the mining operations.

We have referred to every provision of the instruments which, in our judgment, would tend to throw any possible light on the question in this case which is the construction of the provision for the payment of a "minimum royalty."

Mining leases very frequently include, in addition to the covenant to pay for what mineral may be actually mined, a covenant that the lessee shall mine at least a specified amount each year, and, if he fails to do so, he shall pay a sum equal to the royalty on such minimum amount. In such cases the courts have been frequently called upon to construe this covenant and determine whether it is an absolute undertaking to pay the stipulated amount even if there was no ore to mine, or whether it is merely one to pay for the stipulated quantity, whether mined or not, when the ore exists which might have been mined. These so-called leases so vary in their terms that most of the decided cases are capable of being distinguished from each other on their facts. Hence anything like an extended analysis of them would hardly be profitable.

Upon a quite thorough examination of the numerous cases cited by counsel three facts have impressed themselves upon us, viz.: First, that the courts have frequently made their decisions to turn upon the form of words used in this particular covenant, rather than upon an entire consideration of the various provisions of the instrument, in order to ascertain its scheme and subject-matter; second, that they have often failed to distinguish between the subject-matter of the contract and mere matters of inducement to

its execution; and, third, that the courts have been more or less influenced by their familiarity with the doctrines of the common law relating to landlord and tenant, which are usually favorable to the landlord.

Mining leases containing a covenant for the payment of a minimum rent or royalty may be divided into two general classes: First, those which require its payment as a dead rent, irrespective of produce; and, second, those which require the mining of a stipulated amount of ore, or, upon failure to do so, payment of the royalty upon it. Where the covenant is of the first class, the lessee is liable to pay this minimum royalty as a dead rent, even if no ore existed. Where the covenant is of the second class, it has been generally construed as an obligation to pay for the stipulated quantity of ore, whether mined or not; not whether it existed or not,—that is, that the lessee contracts for diligence and promptitude in mining, but not for the productiveness of the mine. In our opinion, the covenant in the leases under consideration is of the second class.

Of course, we understand that the mere fact that leased premises prove to be of less value than was supposed is no defense to an action for rent. In other words, the nonexistence of things which were mere matters of inducement to the execution of the contract will not relieve a party from its obligations. But the case is entirely different where the thing contracted for, and which constituted the subject-matter of the contract, had no existence.

In the present case, merchantable shipping iron ore, which the parties supposed existed, and not the land, was the subject-matter of these contracts. It is true, they start out in form as leases of the land; but this is only for mining purposes, and every right which the defendant is given in the land is merely incident and auxiliary to mining and taking out merchantable shipping ore. The reddendum clauses all provide for the payment of "royalty" on ore, which is never spoken of as rent for the land. The very covenant which provides for the payment of a minimum royalty also provides for giving the defendant credit on the output of subsequent years for the amount previously paid in excess of the quantity actually mined.

It seems to us that this provision for credit of advance royalties is based on the assumption that there was ore which the defendant might have raised during such prior year or years. Otherwise expressed, this covenant is not one to pay royalty, whether ore exists or not, but to pay royalty, if ore exists, whether it is mined or not.

Stress is laid on the provision giving the defendant the right to terminate the leases at any time on sixty days' notice as indicating that it was the understanding of parties that this was the only way by which defendant could relieve itself from the payment of the minimum royalty, and that until the leases were thus terminated it was absolutely bound to pay such minimum as a dead rent for the premises. We do not think that any such inference can be fairly drawn from that provision. It had an office to perform entirely independent of the nonexistence of ore; as, for example, in case merchantable shipping ore existed, but, because of its low grade, or the great cost of raising it, the defendant deemed it unprofitable to continue mining operations.

We understand this form of mining lease, which is now in common use in this state, was borrowed from Michigan, where it, or one substantially the same, has been in use for many years, and which has received in that state a construction in accordance with our views. Gribben v. Atkinson, 64 Mich. 651, 31 N. W. 570. The only difference we discover between the lease construed in that case and those now under consideration is that it expressly reserved to the lessor the possession of the lands not occupied by the lessee for mining purposes whenever such possession did not interfere with the lessee's mining operations. But we do not see that this is a material difference, inasmuch as in the present case the land was only leased for mining purposes, especially as the use of the land was of no value for any other purpose.

A lease in most respects similar received a different construction in Palmer v. Wallbridge, 15 Can. Sup. Ct. 650, but the decision was by a divided court. Moreover, in that case the lease was a general lease of the land, and not confined to mining purposes.

The fact that defendant had not formally terminated the lease does not interfere with its right to resist payment of royalty on the ground that it had not accrued due by reason of the nonexist-

ence of merchantable shipping ore.   Under the findings of fact the defendant was entitled to judgment.

The cause is therefore remanded, with directions to the trial court to amend its conclusions of law and order for judgment in accordance with this opinion.