[No. 2363-1. Division One. September 15, 1975.]

S. L. ROWLAND CONSTRUCTION COMPANY, ET AL, *Appellants,*
v. BEALL PIPE AND TANK CORPORATION, *Defendant,*
THE CITY OF EVERETT, *Respondent.*

*DeGarmo, Leedy, Oles & Morrison, Seth W. Morrison,* and *Arthur D. McGarry,* for appellants.

*Elvidge, Veblen, Tewell, Bergmann & Taylor, James H. Krider, Sellers & Jones,* and *Bruce E. Jones,* for respondent.

ANDERSEN, J.—

## FACTS OF CASE

The City of Everett, finding itself with a badly deteriorated 22-mile long wooden pipeline leading from its water source at Lake Chaplain, called for bids on the construction of a new steel pipeline.

S. L. Rowland Construction Company (Rowland) was the low bidder of 13 bidders on a 11½-mile-long segment of the new line. This was the portion of the pipeline running underground from Woods Creek, north of Monroe, to Jones Hill, north of Snohomish. Rowland contracted with the City of Everett (the City) to construct a 51-inch steel pipeline along this route for $2,401,353.60.

After a portion of the line had been built, Rowland, finding its people and equipment mired down in mud and beset with other problems, pulled off the job and left it to the surety on its preformance bond to arrange for completion of the work.

The segment of pipeline covered by this contract was eventually completed, although nearly a full year behind schedule.

Rowland and its surety, United Pacific Insurance Company, primarily blamed the City for the difficulties encountered on the job and brought this suit against the City. They also joined the pipe manufacturer, Beall Pipe and Tank Corporation (Beall), as a defendant. For convenience, we will herein refer to the plaintiffs as though Rowland were the sole plaintiff.

The City paid $2,388,343 on the Rowland contract. Rowland, however, claimed it was entitled to over a million dollars in additional compensation because of added work and expense to which it had been put.

Rowland's position was and is that its added work, expense and much of the delay were attributable to the City

having made extensive changes in the plans with respect to grade and elevation of the pipe installation after the contract was let. These changes, say Rowland, required extensive redesigning of the pipe sections and caused substantial delay in the manufacture and delivery of the pipe and hence delay of the entire job.

The case was preassigned to the trial judge herein and he held well over a week of pretrial hearings.

As a consequence of such hearings, a pretrial order was entered. In that order, the court reduced all of Rowland's allegations to some 35 specific numbered claims. The pretrial order also contained the City's contentions with respect to each of Rowland's 35 claims as well as such of the facts the court had determined at the hearings to be uncontroverted.

During the pretrial proceedings, the court ruled against certain of Rowland's claims as a matter of law. It also granted Beall's motion for a summary judgment of dismissal. Rowland subsequently appealed the Beall dismissal. That appeal has since been dismissed and Beall is no longer a party to this action.

This case was tried to a jury. The trial lasted almost 3 months. Some 23 of Rowland's claims for additional compensation were submitted to the jury for determination. The jury was accorded the use of the court's pretrial order in its deliberations. That 45-page order, as amended by the court's rulings made before and during the trial, was admitted as exhibit No. 274 at the trial and the jury was instructed in its use.

The jury returned what was essentially a defense verdict in that it found for the City on all of the major issues. There was also, however, a verdict in the sum of $12,450 in favor of the plaintiff Rowland against the City. It was stipulated by counsel that the City was entitled to a credit against this in the amount of $6,632.82. This resulted in final judgment being entered in favor of Rowland against the City for the net sum of $5,817.18 and taxable costs.

The plaintiff Rowland, appeals to this court from certain rulings of law made by the trial court.

The record brought up with the appeal, while voluminous is nonetheless not a verbatim record of the entire proceedings below. It is, however, properly certified in accordance with CAROA 37 as containing all material facts, matters and proceedings.

The City also cross-appeals on one issue.

### CONTRACT PROVISIONS

The written contract signed by the parties consists of a basic 83-page contract document together with certain addenda thereto and plans and specifications incorporated therein by reference.

Most of the contract clauses here in question are themselves of such length that to set them all out fully in this opinion would contribute more to redundance than to clarity.

An outline of the contract provisions pertinent to the issues on this appeal follows.

As stated, Rowland agreed to build an 11½-mile segment of the City's new pipeline for the bid price.

Rowland acknowledged in the agreement that it had been instructed to investigate all of the factors involved in the work and that it could not claim damages or extra compensation by reason of any error or omission made by it in the preparation of its bid. (Clauses Nos. 5 and 6.)

The contract provided:

> The quantities shown in the Proposal are approximate only and are for the purpose of comparing bids. The City of Everett expressly reserves the right to increase or decrease any of the quantities and to make reasonable changes in designs without being responsible to the Contractor in any way for extra costs or for anticipated profits. The Contractor will be paid for the actual quantities of work finally installed or performed at the applicable unit prices stated in his Proposal.

(Clause 7.)

If unforeseen conditions required major changes, written change orders were to be furnished to Rowland. If the

parties could not then agree on the compensation for such extra work, it was to be paid for by the City on the basis of cost plus 15 percent (Clauses Nos. 8 and 9.)

Rowland waived any claim for damages due to hindrance or delay and the City agreed to grant time extensions equivalent to time so lost. A formula was provided by which time loss was to be calculated and by which it would be determined what extensions would be granted. Time extensions were to be confirmed in writing by the project engineer. (Clauses Nos. 15 and 16.)

The entire project was to be completed within 400 calendar days after notice to commence was issued subject, however, to the extensions granted for time loss caused by inclement weather and delay in obtaining delivery of materials. (Addendum No. 2.) Rowland agreed to pay the City liquidated damages of $150 per day for each day the job ran past the designated completion date. (Clause No. 17 and Addendum No. 2.)

Periodic payments to the contractor were provided for as the work progressed, with the City retaining 10 percent of the total contract amount until 30 days after the contract was completed and accepted by the City. (Clause No. 14.)

## ISSUES

ISSUE ONE. Where a construction contract between a municipality and a contractor contemplates that changes can be made in the work to be done and provides for payment of extra work at a specified rate, does the contractor that sues the municipality for extra work have the right to establish its claimed damages by the total cost method, *i.e.*, by proving all of its costs over the entire job and then asking to recover all such costs together with an additional sum to cover overhead and profit based on quantum meruit?

ISSUE TWO. Does a "no damage" clause in a contract between a municipality and a contractor bar the contractor's claim for damages due to job delays allegedly caused it by plan changes made by the municipality after the contract was let?

ISSUE THREE. Where the contract of the parties provides that time lost by inclement weather will entitle the contractor to a time extension equivalent to the time lost, can the contractor sue the municipality with which it contracts for damages due to the municipality's refusal to authorize a winter shutdown during a severe winter? Further in this same connection, can evidence be admitted to establish that it is customary on outdoor construction jobs to grant a contractor's request for a winter shutdown when confronted by severe weather conditions?

ISSUE FOUR. As raised by the municipality on its counterclaim, did the trial court err when it instructed the jury that it could not assess liquidated damages against the contractor after the pipeline had been placed in full service?

## DECISION

ISSUE ONE.

CONCLUSION. The total cost basis of proving damages is not favored. It cannot be used where extra work is caused to the contractor by plan changes made by the municipality for which it contracted to build a pipeline where the extra work was not substantial and was within the contemplation of the parties at the time the contract was entered.

Rowland's claim No. 1 in the pretrial order was a comprehensive claim which in some respects encompassed within it all of the other items of claimed damage contained in its remaining 34 claims. The trial court granted the City's motion for partial summary judgment and dismissed claim No. 1. The pretrial order summarized this claim and the court's ruling as follows:

Claim No. 1 alleges:

That the Defendant in making revisions to the vertical and horizontal location of the pipeline affecting over 50% of the total line and in establishing the final location at which the pipe was to be installed different from the location specified in the shop drawings as revised and approved in accordance with the Defendant's directions, has caused such a change in the contract performance as to constitute either a constructive, cardinal change and/or a material breach of the contract by the Defendant, in either of which events Plaintiffs are entitled to

recover all of their costs, plus a reasonable profit on the basis of either force account provision of the contract or quantum meruit recovery for breach of contract, in the total amount of $1,040,933.

This contention has been denied by the Court as a matter of law on partial summary judgment.

It is to be noted that this language, as well as that of the other claims dismissed by the court as a matter of law, were deleted from the copy of the pretrial order put into evidence.

The language of claim No. 1 taken by itself is unfortunately confusing. The effect of the trial court's ruling as applied in the context of the trial, was simply to prevent Rowland from proving its claimed damages by the total cost method. What Rowland had sought to do by this claim was to establish its damages by merely proving all of its costs over the entire job and then asking that such costs plus an additional sum to cover overhead and profit be awarded to it under the principle of quantum meruit.

It obviously would have greatly facilitated the ease with which Rowland could have proven its damages, and probably its entire case as well, if it had been permitted to remove the written contract of the parties as the basis for computing damages. This the trial court's ruling prohibited it from doing, and this Rowland assigns as error.

At the trial, Rowland was fully permitted to introduce evidence on each of its individual claims that went to the jury, to show what it claimed were major changes causing it extra work and to prove damages thereon at the contract rate for extra work of cost plus 15 percent. The jury was also instructed as to that basis of recovery and damages. The jury by its verdict denied Rowland any recovery for such extra work claimed under the contract.

The total cost basis of proving damages is not favored in law and is generally upheld only when no better proof is available. *H. John Homan Co. v. United States*, 418 F.2d 522, 528 (Ct. Cl. 1969); *Turnbull, Inc. v. United States*, 389 F.2d 1007, 1015 (Ct. Cl. 1967); *Oliver-Finnie Co. v. United States*, 279 F.2d 498, 505 (Ct. Cl .1960); *F.H. McGraw & Co.*

*v. United States*, 130 F. Supp. 394, 399 (Ct. Cl. 1955). The criticisms leveled against it include that it assumes the contractor's costs are reasonable and that the contractor was not responsible for any increases in such costs. *F.H. McGraw & Co. v. United States, supra* at 400.

■ In this state, the total cost basis of establishing damages can be used, but only in a limited category of cases. It may be used in building and construction contract cases when substantial changes occur which are not covered by the contract or within the contemplation of the parties and which are not such that the contractor should have anticipated or discovered them. In such cases, the contractor is permitted to show damages on a total cost basis and to recover in quantum meruit for extra work and materials required and including a profit factor on such amount. *V.C. Edwards Contracting Co. v. Port of Tacoma*, 83 Wn.2d 7, 13, 514 P.2d 1381 (1973), 7 Wn. App. 883, 503 P.2d 1133 (1972); *Bignold v. King County*, 65 Wn.2d 817, 826, 399 P.2d 611 (1965).

Here the City filed the project engineer's affidavit in support of its motion for summary judgment directed to Rowland's claim No. 1. That affidavit was to the effect that the plan changes by the City did not cause substantial changes in the field. Pipeline direction changes were minor, according to the project engineer, and could be compensated for in the field by use of what are known as "pulls" and without the necessity of redesigning the pipe.

The project engineer's affidavit was to the further effect that the original plans required 150,230 cubic yards of excavation and, as revised, called for only 255 more cubic yards or a change of less than 1 percent. This contrasts with the situation presented in *V.C. Edwards Contracting Co. v. Port of Tacoma, supra*, where use of the total cost method of proving damages was approved. In *Edwards*, the contractor found itself dealing with 30 sewer crossings on a job rather than the 5 shown on the plans, and having to import 92,000 yards of fill rather than the 1,000 yards called for by the

plans. The situation in the present case, and that in *Edwards*, upon which Rowland relies, are not comparable.

Additionally, the contract by its express terms contemplated changes of the sort that the City made. As to any reasonable changes in design, Rowland was entitled by clause No. 7 to be paid for additional work at the applicable unit price. As to any major changes, clauses Nos. 8 and 9 gave it the right to be paid for extra work at the rate of cost plus 15 percent in the event agreement on the compensation for such extra work could not otherwise be reached with the City. For this reason as well, the total cost basis of establishing damages was inappropriate in the present case. *V.C. Edwards Contracting Co. v. Port of Tacoma, supra.*

The project engineer's affidavit was not controverted by affidavit or by the record properly before the court at the hearing. Summary judgment as to Rowland's claim No. 1 was properly granted. *Plaisted v. Tangen*, 72 Wn.2d 259, 263, 432 P.2d 647 (1967); *Bates v. Grace United Methodist Church*, 12 Wn. App. 111, 114, 529 P.2d 466 (1974).

ISSUE Two.

CONCLUSION. Under a provision in a construction contract by which the contractor specifically waived claims for damages for any hindrance or delay and in lieu thereof was granted extensions of time, the contractor was barred from recovering damages for delays caused by plan changes made by the municipality.

It has become common practice to insert a provision in construction contracts which precludes claims by the contractor for damages due to delay. The validity of such provisions is usually upheld. Annot., 10 A.L.R.2d 801, 803 (1950); 13 Am. Jur. 2d *Building & Construction Contracts* § 52 (1964).

The "no damage" clause in the contract herein provided that while the contractor waived damages for hindrance and delay, it was entitled to corresponding time extensions. The contract clause used the following language:

The Contractor herewith specifically waives claims for

damages for *any* hindrance or delay. He will, in lieu thereof, be granted extensions of time . . .

(Italics ours.) (Clause No. 15.)

Based on this "no damage" clause, the trial court granted the City's motion for partial summary judgment and denied Rowland's claim No. 17, which asked monetary damages in the sum of $330,409 for delays it said were caused by the City's plan changes.

Rowland nevertheless asks in effect that we write into the "no damage" clause an exception that such clause will not apply to a delay caused by the City. This court cannot rewrite a contract or create a new one under the guise of judicial interpretation. *Grant County Constructors v. E.V. Lane Corp.*, 77 Wn.2d 110, 121, 459 P.2d 947 (1969).

Rowland also refers in this context to the cases of *Bignold v. King County, supra,* and *V.C. Edwards Contracting Co. v. Port of Tacoma, supra,* discussed above. Nothing in those opinions, however, indicates that the contracts there involved had clauses comparable to the "no damage" clause in this contract.

██ It is true as Rowland urges, that "no damage" clauses are strictly construed. When it is clear, however, that a given result comes within the terms of such a provision, it is not open to construction. *Ericksen v. Edmonds School Dist. 15*, 13 Wn.2d 398, 409, 125 P.2d 275 (1942); 13 Am. Jur. 2d *Building & Construction Contracts* § 52 (1964).

The validity of various forms of clauses precluding a contractor from claiming damages against an owner for owner-induced delays have previously been upheld in this state. *American Pipe & Constr. Co. v. Harbor Constr. Co.*, 51 Wn.2d 258, 262, 317 P.2d 521 (1957); *Ericksen v. Edmonds School Dist. 15, supra.* We again do so here.

The word "any" is a broad and inclusive term with respect to subject matter. *Rosenoff v. Cross*, 95 Wash. 525, 528, 164 P. 236 (1917); *State ex rel. Evans v. Brotherhood of Friends*, 41 Wn.2d 133, 145, 247 P.2d 787 (1952). The contract language waiving damage claims for "any hindrance or delay" is broadly enough stated that it includes

delays caused by the City. Rowland is, therefore, barred by the terms of the contract from recovering damages that may have been caused to it by the City's plan changes.

The City filed another affidavit of the project engineer, as well as an affidavit of the pipe manufacturer's engineer, in support of its motion for summary judgment against Rowland's claim No. 17. These state, in effect, that time extensions were given to Rowland commensurate with the delays referred to in its claim No. 17. These affidavits were not controverted by affidavit nor by the record properly before the court at that time. Neither was there a factual showing of any fraud or active interference of a kind that could be argued as transcending the contract. 13 Am. Jur. 2d *Building & Construction Contracts* § 52 (1964); Annot., 10 A.L.R.2d, *supra*, §§ 3, 4, at 804.

The trial court's entry of a partial summary judgment deleting Rowland's claim No. 17 was proper. *Plaisted v. Tangen, supra; Bates v. Grace United Methodist Church, supra.*

Issue Three.

Conclusion. Where parties provide a remedy for inclement weather in their contract, that remedy is presumed to be the sole remedy. Where nothing appears to the contrary in either the contract or the circumstances surrounding its execution, the presumption is controlling and the contractor has no cause of action for monetary damages because of the denial of its request to shut down the job for the winter. Testimony as to custom or usage which would have the effect of adding a new proviso into an unambiguous contract giving the contractor a right to a winter shutdown is inadmissible.

At the close of Rowland's case, the trial court sustained the City's challenge to the sufficiency of the evidence as to Rowland's claims Nos. 18 and 20. These were claims asking damages from the City on the basis of the City's refusal to grant Rowland's request to shut the job down for the winter when its work bogged down in the mud and rain of a

bad winter. These two claims were for $266,182 and $51,161 respectively.

Rowland assigns error to the granting of the City's challenge, as well as to rulings of the trial court in refusing to admit certain testimony about a claimed custom or usage in the construction industry relative to the granting of contractors' winter shutdown requests.

The City was confronted with a situation where its old wooden waterpipe had deteriorated. It contracted with Rowland for Rowland to build a portion of a badly-needed new line. It put into the contract, which Rowland successfully bid on and then signed, that time was of the essence. Thus, the City was entitled to its viewpoint on the matter of winter shutdown as was Rowland, albeit Rowland was faced with admittedly serious problems on the job.

Rowland's several arguments on this point reduce to the single proposition of whether the contract impliedly or by its express terms entitled Rowland to shut down the job for the winter or not. If a contract is ambiguous, it can be construed by a court, but an ambiguity cannot be read into a contract when the court can reasonably avoid doing so by reading the contract as a whole. *Grant County Constructors v. E.V. Lane Corp., supra.*

We hold that when the contract of the parties to this case is read as a whole, their intentions are clear. The contract provides its own remedy for inclement weather which is that "[t]ime lost by inclement weather will entitle the Contractor to an extension equivalent to the time lost, whether it be a single continuous period or the accumulated total of several periods." (Clause No. 15.) The contract is equally clear that nonworking days caused by inclement weather or adverse conditions resulting therefrom are to be determined by the engineer on a day-to-day basis according to the formula provided in the contract. A "disputes" clause provided procedures for protesting the engineer's decisions. (Clause No. 20.)

As held in *United Glass Workers' Local 188 v. Seitz,* 65 Wn.2d 640, 642, 399 P.2d 74, 13 A.L.R.3d 1000 (1965):

This court is committed to the view that, when parties to a contract foresee a condition which may develop and provide in their contract a remedy for the happening of that condition, the presumption is that the parties intended the prescribed remedy as the sole remedy for the condition, and this presumption is controlling where there is nothing in the contract itself or in the conditions surrounding its execution that necessitates a different conclusion. *Goss v. Northern Pac. Hospital Ass'n*, 50 Wash. 236, 96 Pac. 1078; *Ericksen v. Edmonds School Dist.*, 13 Wn. (2d) 398, 125 P. (2d) 275.

*Accord, F.S. Jones Constr. Co. v. Duncan Crane & Rigging, Inc.*, 2 Wn. App. 509, 512, 468 P.2d 699 (1970).

Nothing in this contract or the conditions surrounding its execution gave Rowland a right to obtain in advance a winter shutdown. The presumption that the parties intended the inclement weather remedies in the contract as the sole remedy for that condition is therefore controlling.

The trial court properly ruled at the close of Rowland's case that since it had no right to an advance winter shutdown of the entire project, it had no cause of action for damages against the City based on the City's refusal to allow a winter shutdown. Dismissal of Rowland's claims Nos. 18 and 20 was not error.

In this same connection, Rowland assigns error to the exclusion of custom and usage testimony. The following offer of proof was made during the testimony of its expert witness, David Morris:

MR. MORRISON: I have an offer of proof on the rejection of questions relating to custom and usage as to winter shutdown. If permitted to answer, Mr. Morris would testify that it is the custom in the industry upon request, at least where the contractor is not at fault and has been substantially delayed into the winter operations, that a shutdown is normally granted to minimize his excess costs and to secure a proper performance of the contract. That offer of proof would relate to both those questions, your Honor.

MR. KRIDER: Object, same grounds that have been stated.

THE COURT: Sustained.

This is not a situation where the proferred testimony would have explained technical or trade terms susceptible of more than one plain and reasonable construction. *See Douglass v. Stachecki*, 13 Wn. App. 922, 537 P.2d 1044 (1975). It would instead have had the effect of imparting a distinctly new proviso into the contract.

■ The trial court did not err in sustaining the objection. Evidence of custom or usage is not admissible where its purpose or effect is to contradict, vary, or qualify the plain unambiguous terms of a contract. *R.J. Menz Lumber Co. v. E.J. McNeeley & Co.*, 58 Wash. 223, 230, 108 P. 621 (1910); 21 Am. Jur. 2d *Customs & Usages* § 23 (1965). Nor may it be admitted to add new conditions or elements to a plain and unambiguous agreement which on its face is complete. 21 Am. Jur. 2d *Customs & Usages* § 24 (1965).

Had Rowland desired to further protect itself against the weather or other uncertain contingencies, it was obliged to do so by its contract. *Valley Constr. Co. v. Lake Hills Sewer Dist.*, 67 Wn.2d 910, 916, 410 P.2d 796 (1966).

Rowland assigns error to the trial court's failure to grant a new trial on the basis of its foregoing assignments of error. For the reasons stated, the trial court did not err in denying Rowland's motion for a new trial.

ISSUE FOUR.

CONCLUSION. A liquidated damage clause in a pipeline construction contract, which required the contractor to pay the same $150 daily rate of damages after the pipeline was put into full operation as before, amounted to a penalty after the pipeline was put into full use. The clause was therefore invalid insofar as it purported to determine damages after the line was put into full use by the municipality.

The contract provided that the contractor would pay liquidated damages to the City at the rate of $150 per day for each calendar day the job ran past the completion date.

It is not controverted that the pipeline itself was completed and in full operation on or about February 1, 1968, and that the entire project was not finally accepted until

June 18, 1968. During the approximately 4½-month interim, certain "punch list" items, primarily involving cleanup and landscaping, were still being performed.

The trial court gave a damages instruction to the jury in connection with the City's counterclaim against Rowland. That instruction concluded:

> In determining the proper assessment of liquidated damages, if any, the time of assessment of such damages shall terminate as of the date of placing the pipeline in full service by the defendant, on or about February 1, 1968.

Instruction No. 9 (part). This was excepted to by the City and the City brings it before this court as the sole issue on its cross-appeal.

No error has been assigned by the City to any refusal by the trial court to instruct the jury as to the City's right to recover actual damages for the period of time between the line going into service and final acceptance of the contract. Therefore, there is nothing before us in that regard. The City here argues that it had a right to liquidated damages at the rate of $150 a day over the 4½-month interim, and that the trial court erred in giving the portion of the instruction noted.

█ It is unquestionably the rule that the courts of this state look with favor on liquidated damage clauses. *Ashley v. Lance*, 80 Wn.2d 274, 280, 493 P.2d 1242 (1972); *Central Credit Collection Control Corp. v. Grayson*, 7 Wn. App. 56, 61, 499 P.2d 57 (1972).

Until the date that the pipeline was put into full service, the situation presented was typical of those in which the use of such clauses is favored. As the City's brief well expressed it, "[t]o try to determine the actual effect of continued use of the deteriorated old line (and its associated problems) upon several hundred thousand water users would be an impossible task." It was apparent to the parties at the time the contract was entered, however, that the situation would be an entirely different ball game once

the pipeline was in operation and fulfilling the entire purpose for which it was built.

Our courts have infrequently held liquidated damage clauses to be penalties, but at the same time they have not hesitated to do so once it has become obvious that such clauses are penalties. *Management, Inc. v. Schassberger*, 39 Wn.2d 321, 326, 235 P.2d 293 (1951).

A liquidated damage clause becomes a penalty when the amount fixed has an in terrorem effect of inducing performance rather than compensating loss. *Management, Inc. v. Schassberger, supra; Brower Co. v. Garrison*, 2 Wn. App. 424, 433, 468 P.2d 469 (1970). This is such a case.

Since February 1, 1968, the City's water pipeline was fully operational. The landscaping and cleanup that followed was a relatively minor portion of the work involved and was of no great urgency, since this section of line went through a rural area. It is true, as the project engineer testified, that the City's engineering firm billed the City some $6,000 for services performed subsequent to February 1, 1968. He candidly admitted, however, that much of that was for services that had no connection with the "punch list" work being done.

We hold that a liquidated damage clause in a pipeline construction contract, which requires the contractor to pay the same $150 daily rate of damages after the pipeline was put into full operation as before, amounted to a penalty after the pipeline was put into full use. The clause was, therefore, invalid insofar as it purported to determine damages after the line was put into full use by the municipality. *Psaty & Fuhrman, Inc. v. Housing Authority*, 76 R.I. 87, 68 A.2d 32, 38, 10 A.L.R.2d 789 (1950); *Continental Ill. Nat'l Bank & Trust Co. v. United States*, 101 F. Supp. 755, 758 (Ct. Cl. 1952); *Minmar Builders, Inc.*, 72-2 CCH Bd. Cont. App. Dec. ¶ 9599 (1972). It is literally hornbook law:

> In drafting liquidated damages clauses, care should be taken to see that, if the clause applies to breaches of

varying seriousness, the amount to be paid is adjustable to fit the probable damage.

C. McCormick, *Damages* § 156 (1935). This clause was not so drafted although the daily rate of liquidated damages could have been easily varied to reflect the entirely different range of potential damage that would exist once the line went into operation.

Thus it is that the damages stipulated to did not constitute a reasonable forecast of just compensation for breaches after the pipeline was put into full use, nor was there any real difficulty in ascertaining the damages that would be caused by such breaches once that point in the work was reached. The liquidated damages clause was, therefore, unenforceable after February 1, 1968, since after that date it had an in terrorem effect of inducing performance rather than the permitted effect of compensating for loss. *Management, Inc. v. Schassberger, supra*; *Brower Co. v. Garrison, supra*; *Restatement of Contracts* § 339 (1932).

Based on the evidence in the case and particularly on the contract itself, the trial court correctly ruled as a matter of law on the partial invalidity of the liquidated damages clause by giving the instruction in question.

Judgment affirmed.

WILLIAMS, C.J., and CALLOW, J., concur.

Petitions for rehearing denied February 11, 1976.

Review denied by Supreme Court April 23, 1976.