[No. 7486–5–I.   Division One.   July 21, 1980.]

WEYERHAEUSER REAL ESTATE COMPANY, *Appellant*, v.
STONEWAY CONCRETE, INC., *Respondent*.

*A. Richard Dykstra* and *Stafford, Frey & Mertel,* for
appellant.

*John F. Kovarik* and *Casey, Pruzan, Kovarik & Shulkin,*
for respondent.

RINGOLD, J.—Weyerhaeuser Real Estate Company (Weyerhaeuser), the lessor, appeals the trial court's judgment denying its claim for rental due under a mining lease on the basis of commercial frustration. Stoneway Concrete, Inc. (Stoneway), the lessee, cross–appeals the trial court's dismissal of its other affirmative defenses. We conclude that the trial court erred in relieving the lessee Stoneway of its obligations under the theory of commercial frustration and therefore reverse.

On September 15, 1969, the parties entered into a 9–year mineral lease for the strip mining for sand and gravel of a tract of Weyerhaeuser land near Soos Creek in south King County. The lease provided:

3. *Basic Rental*
   *Lessee shall pay Lessor a basic minimum annual rental equal to*
   (a) $10,000 per year during the first two years of this lease contract;
   (b) $25,000 for each contract year thereafter.
   *This basic minimum annual rental shall be due and payable irrespective of whether Lessee produces any minerals from the leasehold.* It shall be paid in equal monthly installments. Each installment shall be paid in advance on or before the 5th day of the calendar month for which it is due.

(Italics ours.) Other relevant lease provisions were:

11. *Zoning*
   (a) Lessee shall see to it that its mining and other operations under this lease are at all times in full and strict compliance with all zoning regulations applicable to the leasehold.
   (b) Lessor agrees to assist Lessee at all times in securing and maintaining such rezonings, zoning classifications and/or zoning permits as it may require for its contemplated operations hereunder.
   (c) Any violation by Lessee of applicable zoning regulations which is not cured within the time allowed by the proper zoning enforcement authorities shall entitle Lessor to cancel this lease upon six months' notice.

25. *Lessee's Option to Terminate Lease*

Lessee may terminate this lease as of the end of any contract year by giving Lessor one year's notice of its intention to do so if in Lessee's reasonable judgment the mining operations contemplated hereby have become uneconomical.

In other sections Weyerhaeuser promised to assist Stoneway to obtain and maintain such zoning and pollution control permits "as it [Stoneway] may require for its contemplated operations hereunder."

The plan required an unclassified use permit from the King County Planning Department. As proposed by the planning department to the King County Council the unclassified use permit contained conditions, some requiring approval of other state agencies including the Department of Fisheries and the Water Pollution Control Commission.

Over public opposition the King County Council granted the permit resulting in a referendum against its issuance. During litigation regarding the permit and referendum Stoneway continued seeking other necessary permits. In April of 1971, Stoneway accused Weyerhaeuser of reneging on its obligation to assist in obtaining the necessary permits and therefore paid no further rental installments, but continued to participate in the litigation. By the time the Supreme Court resolved the use permit and referendum litigation, the State Environmental Policy Act of 1971 (SEPA) had been enacted. Another lawsuit regarding the unclassified use permit was begun and certified as a class action requiring King County to comply with SEPA. By January 1975, it was clear that either the State Department of Ecology, the County, or both were going to require an environmental impact statement, whereupon Stoneway in mid–1975 abandoned its efforts to get permits for the project and in December 1976 gave notice of termination of the lease to Weyerhaeuser pursuant to paragraph 25 quoted above.

This action was commenced by Weyerhaeuser for rentals due. Stoneway pleaded as affirmative defenses Weyerhaeuser's breach of contract, implied modification of contract, implied conditions precedent and commercial frustration. In addition Stoneway filed four counterclaims. The trial court adjudged that the lessee sustained the defense of commercial frustration, and should be relieved of obligations under the lease as of the time when the parties had expected the permits to have been granted, January 1, 1972. The relevant findings provide:

23.

In mid–1975, as a result of the costs anticipated and the uncertainty of result, Stoneway abandoned the project. Weyerhaeuser commenced this action in January, 1976. Stoneway had conducted only minimal site operations (test borings) but had extracted no minerals.

24.

The Court finds that, . . . the parties contemplated and were fully aware of the necessity of obtaining permits from the regulatory agencies involved and that this process might require as much as two years, . . .

25.

The decision of Stoneway in mid–1975 to decline to proceed further in pursuit of permits for the project was reasonable and prudent. The indications were, and their counsel so advised them, that workable permits for the extraction of minerals from this site could not, in all probability, be obtained within a practical period of time, if ever. Further expenditures of money and time on the project could not be justified.

26.

Payment of rentals were not expressly conditioned upon receipt of permits, or whatever else might be required, from public agencies before beginning operations, and certainly it is obvious from the terms of the lease that payment of rentals was not expressly conditioned upon public approval of defendant's operation.

█ Stoneway neither presents argument nor authority regarding its cross appeal. An assignment of error unsupported by argument or authority will not be reviewed. *In re*

*Marriage of Croley,* 91 Wn.2d 288, 294, 588 P.2d 738 (1978). We, therefore, consider only Weyerhaeuser's appeal.

The principle underlying the doctrine of commercial frustration has long been recognized by the Washington courts. *Adams v. Washington Brick, Lime & Mfg. Co.,* 38 Wash. 243, 248, 80 P. 446 (1905), where the court said:

> The business contemplated . . . became thenceforth impossible, by reason of something which neither foresaw or anticipated—by a change that neither expected in a condition which, in entering upon the contract, both assumed would continue . . . That which was the essence—the subject–matter—of their contract became nonexistent.

*See also* RCW 62A.2–615, for a statutory expression of the doctrine.

Weyerhaeuser argues that only frustration of the "desired object of the contract" should warrant application of the doctrine of commercial frustration. The desired object here, Weyerhaeuser argues, was the production of minerals not procurement of permits, therefore, commercial frustration is inapplicable.

Stoneway, on the other hand, contends that the parties agreed that Weyerhaeuser would assist Stoneway in obtaining the necessary permits, thus making that effort joint. The court found that the parties anticipated procurement of the necessary permits no later than January 1, 1972. The Restatement of Contracts § 460 (1932) provides that the duty to perform a promise is discharged when a specific thing necessary for the performance is not in existence in time for seasonable performance. The requisite permits were not in existence here and therefore Stoneway claims its duty to perform is excused.

In applying the doctrine of commercial frustration Washington courts have relied upon an "assumed risk" analysis dependent upon the foreseeability of the supervening event that makes performance impossible or frustrates performance. The rationale of that rule is best

summarized by Justice Traynor in *Lloyd v. Murphy,* 25 Cal. 2d 48, 54, 153 P.2d 47, 50 (1944):

> The purpose of a contract is to place the risks of performance upon the promisor . . . If it [a supervening event] was foreseeable there should have been provision for it in the contract, and the absence of such a provision gives rise to the inference that the risk was assumed.

In *Liner v. Armstrong Homes of Bremerton, Inc.,* 19 Wn. App. 921, 926, 579 P.2d 367 (1978), the court states:

> It has long been recognized in Washington that when a party by his contract assumes an unqualified duty, he is bound to perform if possible, notwithstanding the occurrence of an unexpected, *yet foreseeable event,* against which he might have guarded in his contract.

(Italics ours.) Similarly, in *Fishchler v. Nicklin,* 51 Wn.2d 518, 522–23, 319 P.2d 1098 (1958), the court quoted another court, holding that:

> "Where the impossibility arises after the contract is made and the defendant had knowledge of facts and circumstances from which it might *reasonably have been foreseen,* but makes no provision for such contingency, he assumes the risk of the happening of the impossibility, and cannot defend on that ground."

(Italics ours.) (Impossibility and frustration are doctrinally related.) 6 A. Corbin, *Contracts* § 1353 (1962).

The trial court found that the parties foresaw the need for the permits, whose difficulty of obtainment frustrated the fulfillment of the contract objectives.

■■ When the facts are established, contract construction is a question of law. *Rau v. Liberty Mut. Ins. Co.,* 21 Wn. App. 326, 585 P.2d 157 (1978). We construe the contract here to have provided a remedy for the foreseen risk that the permits would not be seasonably obtained; when parties to a contract have agreed upon a remedy for the happening of a foreseen condition, it is presumed that the parties intended that prescribed remedy as the sole remedy for the occurrence of that condition. *S.L. Rowland Constr. Co. v. Beall Pipe & Tank Corp.,* 14 Wn. App. 297,

540 P.2d 912 (1975), and the doctrine of commercial frustration is not available to Stoneway to excuse its nonperformance.

Section 3 of the lease provided that a basic minimum annual rental "shall be due and payable irrespective of whether Lessee produces any minerals from the leasehold." Inherent in the concept of a minimal rental is the notion that a certain specified amount is due regardless of the use of the property. The principle is recognized in *Adams v. Washington Brick, supra* at 251–52, where the court quoted with approval from *Diamond Iron Mining Co. v. Buckeye Iron Mining Co.,* 70 Minn. 500, 73 N.W. 507 (1897):

> "Mining leases containing a covenant for the payment of a minimum rent or royalty may be divided into two general classes: First, those which require its payment as a dead rent, irrespective of produce; and, second, those which require the mining of a stipulated amount of ore, or, upon failure to do so, payment of the royalty upon it. *Where the covenant is of the first class, the lessee is liable to pay this minimum royalty as a dead rent, even if no ore existed.*

(Italics ours.)

The trial court also found that Stoneway abandoned the lease in mid–1975 for basically economic reasons. It is undisputed that Stoneway gave notice of termination in December 1976, according to section 25 of the lease, providing for termination whenever in the lessee's judgment "mining operations contemplated hereby have become uneconomical." Reading this termination clause in pari materia with the lease provisions relating to obtaining the necessary permits for initiation of the mining effort, it is apparent that "mining operations" as used in the termination clause included such preparatory licensing. *Cf. Stender v. Twin City Foods, Inc.,* 82 Wn.2d 250, 510 P.2d 221 (1973). Considering the unambiguous lease provisions, we conclude that the parties intended payment of the minimum rental irrespective of production of minerals until termination in accord with the lease provisions. The failure

to obtain the necessary permits by 1975 certainly met the condition for termination that "in the lessee's reasonable judgment the mining operations contemplated hereby have become uneconomical." Stoneway, however, assumed the burden of paying rental until such time as it terminated the lease according to its terms. The parties having agreed upon a remedy for foreseen events that made performance of the contract uneconomic, such remedy excludes relief under the doctrine of commercial frustration.

Reversed and remanded for judgment against Stoneway for rentals due through December 1977.

SWANSON, J., concurs.

DORE, J. (dissenting)—The majority correctly sets forth the law in Washington on the doctrine of commercial frustration. At its heart is the question of foreseeability. If the supervening event which made performance impossible was not foreseen by the parties, then the doctrine of commercial frustration may be used as a defense to the charge of nonperformance. I dissent from the majority's application of the law to the facts of this case.

The trial judge found that the public outcry, and concomitant failure of the parties to secure the proper permits, was not foreseen by the parties.

Finding of fact No. 24:

> The Court finds that, although the parties contemplated and were fully aware of the necessity of obtaining permits from the regulatory agencies involved and that this process might require as much as two years, *the parties were not aware of and did not contemplate the public outcry* that was heard when news of the project reached the public in the summer of 1970. Weyerhaeuser particularly had prepared itself and had attempted to prepare the public in every way that it could for what can be described as a showcase of industrial development with proper environmental concern. *The parties did not anticipate and were not prepared for the objection and the extensive litigation which followed the initial granting of the unclassified use permit. This unanticipated*

*circumstance* made performance of the contract vitally different from what was reasonably to be expected by the parties when the lease was entered into.

(Italics ours.) This finding is supported by substantial evidence and therefore stands as a verity on appeal. Because this event was not foreseen, the doctrine of commercial frustration was available to Stoneway as a defense.

Almost from the start, Stoneway encountered serious, unexpected problems in its efforts to commence mining operations under the terms of the lease. The public had recently become conscious of the conflict between preserving the natural environment and encouraging industrial development. Unfortunately for Stoneway, the environmentalists prevailed even though Weyerhaeuser tried to allay the public's fears. Finding of fact No. 11.

By the summer of 1970, the opposition to the proposed project "was loud and vociferous." Finding of fact No. 12. It continued to grow after the King County Council granted the necessary unclassified use permit. By September 1970, Stoneway's opponents had retained approximately 22,000 signatures on a referendum petition which would nullify the Council's action. Finding of fact No. 14.

To make matters worse, there were problems surfacing between Stoneway and Weyerhaeuser. In April of 1971, counsel for Stoneway declared that Weyerhaeuser had reneged on its agreement, which had been made a part of the lease to render assistance to Stoneway in obtaining permits. Stoneway refused, after that time, to pay any additional rent under the lease. Finding of fact No. 17.

Inasmuch as there was no anticipation by the parties of the public's determination to block the permits, I cannot agree with the majority that the parties allocated the risk of the occurrence of these difficulties by way of the clause in the contract which provided for a minimum annual rental "irrespective of whether Lessee produces any minerals from the leasehold." That language is not uncommon in mining leases. Its purpose is often "to insure a steady income to the lessor and to spur the lessee into a prompt and diligent

development and operation of the property." 28 A.L.R.2d at 1015–16. In light of the trial court's finding (finding of fact No. 24), there is no reason to seek an alternative, and to my mind strained, construction of this provision of the lease.

The trial court ruled that the lessee should be relieved of its obligations under the lease as of the time when the parties anticipated the permits would be granted (January 1, 1972). I agree.

I would affirm.

Reconsideration denied October 21, 1980.

Review granted by Supreme Court January 19, 1981.